IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-00319 |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF VANESSA R. BRINKMANN**

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.  I am Senior Counsel in the Office of Information Policy (OIP), United States Department

    of Justice (DOJ).  In this capacity, I am responsible for, among other things, reviewing

    records and coordinating the handling of Freedom of Information Act (FOIA) requests

    processed by the Initial Request Staff (IR Staff) of OIP that are subject to litigation.  The

    IR Staff of OIP is responsible for processing FOIA requests seeking records from within

    OIP and from six senior leadership offices of DOJ, specifically the Offices of the

    Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney

    General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs

    (PAO).  The IR Staff determines whether records responsive to access requests exist and,

    if so, whether they can be released in accordance with the FOIA.  In processing such

    requests, the IR Staff consults with personnel in the senior leadership offices and, when

    appropriate, with other components within DOJ, as well as with other Executive Branch

    agencies.

2. I make the statements herein on the basis of personal knowledge, and on information acquired by me in the course of performing my official duties, including information provided to me by other knowledgeable personnel within the Department.

**Plaintiff's FOIA Requests and OIP's Response**

3. On July 27, 2017 and September 26, 2017 House Judiciary Chairman Robert Goodlatte wrote to former Attorney General Sessions, raising various issues.  On November 13, 2017 the Department responded to Chairman Goodlatte's letters, stating, in part, that "the Attorney General has directed senior federal prosecutors to evaluate certain issues raised in your letters."  Later, on March 29, 2018 Attorney General Sessions provided an additional response to Chairman Goodlatte's letters, in which he identified United States John W. Huber as leading the Department's evaluation of certain issues raised by Chairman Goodlatte.  (Copies of Chairman Goodlatte's July 27, 2017 and September 26, 2017 letters as well as the Department's November 13, 2017 and March 29, 2018 responses are attached hereto as Exhibit A.)

4. On November 22, 2017, Plaintiff American Oversight submitted four separate FOIA requests to OIP related to the Department's November 13, 2017 response to Chairman Goodlatte.  Specifically, these four FOIA requests sought:

   a. "All records relating to the drafting of the November 13, 2017 letter signed by Assistant Attorney General Stephen Boyd . . . responding to the two letters from Congressman Robert Goodlatte."  The timeframe specified in this request was from July 27, 2017, through the date the search was conducted.  [Hereinafter the "Drafting Request."]

   b. "All records reflecting any analysis of government or legal-ethics issues or

2

evaluating any recusal obligations . . . related to the Attorney General's

participation in connection with any decision relating to any investigation or

prosecution . . . of any issues" raised in Chairman Goodlatte's letters.  The

timeframe specified in this request was from July 27, 2017, through the date the

search was conducted.  [Hereinafter the "Recusal Request."]

c.  "All guidance or directives provided to 'the senior federal  prosecutors'" who

were directed to evaluate certain issues raised in Chairman Goodlatte's letters, as

indicated in the Department's November 13, 2017 response thereto.  The

timeframe specified in this request was from July 27, 2017, through the date the

search was conducted.  [Hereinafter the "Guidance Request."]

d.  "Records sufficient to identify all of the 'senior federal prosecutors' who had been

'directed' to evaluate certain issues raised in [Congressman Robert Goodlatte's]

letters" as indicated in the Department's November 13, 2017 response thereto.

The timeframe specified in this request was from July 27, 2017, through the date

the search was conducted.  [Hereinafter the "Prosecutors Request."]

Copies of Plaintiff's FOIA requests are attached hereto as Exhibit B.

5.  By letters dated December 19, 2017 and December 21, 2017, OIP acknowledged

Plaintiff's FOIA requests.  OIP's letters informed Plaintiff that its requests were being

processed on behalf of OAG, ODAG, and OLA, that searches and/or consultation were

required with other offices, and that OIP would not be able to respond within the twenty-

working-day time limit, or within the ten additional days provided by the statute due to

"unusual circumstances."  Copies of OIP's acknowledgment letters are attached hereto as

Exhibit C.

6. On February 12, 2018, Plaintiff filed suit in connection with the aforementioned FOIA

   requests.  *See* Compl., ECF No. 1.

7. On July 16, 2018, OIP issued its final response to Plaintiff's FOIA requests.  Pursuant to

   this response, OIP informed Plaintiff that searches had been completed for each of the

   four requests.  With respect to the Drafting Request, OIP informed Plaintiff that thirty-

   one pages responsive to its request were located, twelve of which were withheld in full,

   and nineteen of which were released with excisions made pursuant to Exemptions 5, 6,

   and 7(C) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), and (b)(7)(C).[1]  With respect to the

   Recusal and Guidance Requests, OIP informed Plaintiff that aside from the Department's

   November 13, 2017 response to Chairman Goodlatte, no additional responsive records

   were identified.  Lastly, with respect to the Prosecutors Request, OIP informed Plaintiff

   that, in a March 29, 2018 letter to congressional committees, Attorney General Sessions

   identified United States Attorney John W. Huber as leading the Department's evaluation

   of issues raised in Chairman Goodlatte's letters.  OIP provided a copy of the Attorney

   General's March 29, 2018 letter, and informed Plaintiff that no additional responsive

   records were identified.[2]  A copy of OIP's final response to Plaintiff is attached hereto as

---

[1] Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.  Exemption 7(C) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.
[2] To be of assistance, OIP further informed Plaintiff that to the extent that Mr. Huber engaged other staff to assist his efforts, records identifying such individuals, if requested, would likely be withheld in full pursuant to Exemptions 6, 7(A), and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(A) and (b)(7)(C).  Exemption 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.  However, staff later engaged by Mr. Huber are outside the scope of Plaintiff's instant request.

Exhibit D.

8.  During the course of negotiations between the parties, and as presented to the Court in the

parties' October 2, 2018 Joint Status Report, Plaintiff advised DOJ that it would only be

challenging the adequacy of OIP's searches conducted in response to the Prosecutors and

Guidance Requests.  *See* ECF No. 14.  This declaration will therefore address the

searches conducted in response to the Prosecutors and Guidance Requests, and the basis

for my conclusion that these searches were reasonably calculated to identify records

responsive to these requests.

### Description of OIP's Standard Search Methods

9.  As noted in paragraph 1 above, OIP processes FOIA requests on behalf of itself and six

senior leadership offices of the Department of Justice.  OIP makes determinations upon

receipt of a FOIA request, both as to the appropriate senior leadership office or offices in

which to conduct initial records searches, as well as the records repositories and/or

records custodians to search, and search methods to use in conducting records searches

on behalf of the designated senior leadership offices.

10. Assessments of where responsive records are likely maintained are based on a review of

the content of the request itself and the nature of the records sought therein, as well as

OIP's familiarity with the types and location of records that each senior leadership office

maintains, discussions with knowledgeable personnel in the senior leadership offices, and

any research that OIP staff may conduct on the topic of the request.

11. Potentially responsive records may be located in email systems, computer hard drives

(electronic documents), and/or hard copy (paper files).  Depending on the nature of the

request, OIP employs one or more of a variety of search methods to identify potentially

responsive records in the relevant leadership office(s).  OIP staff may conduct keyword-based email/electronic document searches of designated records custodians; keyword searches of records custodians' file lists (and, if necessary, subsequent hand-searches of paper files identified through searches of the file lists); and/or direct inquiries of senior leadership office staff regarding the existence and location of potentially responsive records.

12. Direct inquiry of leadership office staff is the search method typically employed in response to FOIA requests which seek specific, clearly-defined records on topics with which current leadership office staff are personally familiar, and are able to provide informed input on the existence and location of potentially responsive records.  Although not always practical, direct inquiry searches are both highly efficient and accurate, bypassing the "guesswork" that may be associated with search parameters selected solely by FOIA staff by engaging directly with the leadership office staff most familiar with the information subject to a given FOIA request.

13. OIP's initial determination regarding relevant leadership offices, search methods, and/or records custodians is not always final.  In order to ensure that reasonably thorough records searches are conducted, during the course of processing a given FOIA request, OIP continually assesses whether other (both current and former) staff members' records should be searched, or whether alternative search methods should be used, and will initiate such searches as appropriate.  This assessment is based on OIP's review of records that are located in initial records searches, discussions with Department personnel, or other pertinent factors.  In sum, OIP records searches are conducted in an efficient, comprehensive, and agile manner.  The various search steps undertaken by OIP

staff in response to a given request work in tandem to achieve a complete records search.

**OIP's Records Searches Conducted in Response to Plaintiff's Request**

14. In the Prosecutors and Guidance Requests, Plaintiff sought to identify whom former
Attorney General Sessions directed to evaluate certain issues raised in Chairman
Goodlatte's July 27, 2017 and September, 26, 2017 letters, and related guidance or
directives regarding that directive.  Accordingly, OIP determined that a direct inquiry to
knowledgeable staff in the Office of the Attorney General (OAG) would be the most
logical and effective search method.  Accordingly, I contacted the Counselor to the
Attorney General in OAG who is responsible for assisting OIP with FOIA requests for
OAG documents to ascertain (1) whom the Attorney General directed to evaluate these
matters and (2) what guidance or directives, if any, were issued.  The Counselor to the
Attorney General then conferred with other Department officials with direct knowledge
of the subject matter, including the then-OAG Chief of Staff and U.S. Attorney Huber,
and informed me that Mr. Huber was the only senior federal prosecutor whom the
Attorney General directed to look into matters raised by Chairman Goodlatte, as well as
the only prosecutor referenced in the Department's November 13, 2017 and March 29,
2018 responses to Chairman Goodlatte.  Notwithstanding the use of the plural
"prosecutors" in the Department's November 13, 2017 letter to Chairman Goodlatte,
OAG confirmed that there was only one federal prosecutor directed to evaluate and report
to the Attorney General and Deputy Attorney General on these matters: U.S. Attorney
Huber.[3]

---

[3] As stated above, the Attorney General disclosed Mr. Huber's assignment to various
congressional committees in a letter dated March 29, 2018 (subsequent to the filing of Plaintiff's
requests).  *See* Ex. A.

15. OAG also advised that, when the Attorney General directed Mr. Huber to evaluate these matters, no written guidance or directives were issued to Mr. Huber in connection with this directive, either by the Attorney General, or by other senior leadership office staff. OAG also advised that details of Mr. Huber's direction were addressed orally, in meetings and discussions among a small group of Department officials, including the Attorney General, the Deputy Attorney General, the OAG Chief of Staff, the Principal Associate Deputy Attorney General, and U.S. Attorney Huber.[4]  In addition and as stated above, the lack of written guidance or directives was confirmed by OAG, pursuant to internal OAG discussions as well as discussions with Mr. Huber himself.  Nonetheless, as a supplementary measure, I took the additional step of conferring with the Office of the Deputy Attorney General (ODAG) regarding the information provided to me by OAG. As a result of this discussion, I concluded that the OAG information regarding the lack of written guidance or directives to Mr. Huber was adequate and that further searches would be unlikely to identify records relevant to Plaintiff's request.

16. This information —i.e., OAG's confirmation that the only prosecutor directed by the Attorney General to lead the effort in evaluating the issues raised by the Goodlatte letters was U.S. Attorney John W. Huber, and that no written guidance or directives were issued to Mr. Huber – was confirmed over the course of several discussions between OIP and OAG.  Moreover, the information provided directly by OAG was consistent with OIP's independent review of records retrieved in response to Plaintiff's Drafting Request, which did not disclose the number or identity of any federal prosecutors directed by

---

[4] As a United States Attorney, Mr. Huber is generally guided by the United States Attorneys' Manual (recently renamed the Justice Manual), available at https://www.justice.gov/jm/justice-manual.

Attorney General Sessions to look into these matters, other than Mr. Huber.[5]  Likewise, nothing in the records reviewed by OIP indicated the existence of written guidance or directives issued to Mr. Huber.  In light of the clear, comprehensive, and conclusive information I received directly from OAG, and the lack of any indication that other records responsive to Plaintiff's Prosecutors or Guidance Requests exist in leadership office files, I determined that no additional searching was necessary in this instance.

### Conclusion

17. Based on my experience with the Department, my familiarity with the records maintained by the leadership offices, discussions with OAG and ODAG staff, and my understanding of the scope of Plaintiff's requests, I aver that OIP's searches were reasonably calculated to uncover all potentially responsive records and that all files likely to contain relevant documents were searched.

I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkman
Senior Counsel
Office of Information Policy
U.S. Department of Justice

Executed this 16th day of November 2018.

---

[5] For Plaintiff's Drafting Request, OIP conducted an electronic records search of the Office of Legislative Affairs, using the search term "Goodlatte" and a date range of July 27, 2017 to November 15, 2017.

# Exhibit A

BOB GOODLATTE, Virginia
CHAIRMAN

F. JAMES SENSENBRENNER, JR., Wisconsin
LAMAR S. SMITH, Texas
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
RAÚL R. LABRADOR, Idaho
BLAKE FARENTHOLD, Texas
DOUG COLLINS, Georgia
RON DeSANTIS, Florida
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona
JOHN RUTHERFORD, Florida
KAREN HANDEL, Georgia

ONE HUNDRED FIFTEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515-6216

(202) 225-3951
http://www.house.gov/judiciary

JOHN CONYERS, JR., Michigan
RANKING MEMBER

JERROLD NADLER, New York
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
TED DEUTCH, Florida
LUIS V. GUTIÉRREZ, Illinois
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
BRAD SCHNEIDER, Illinois

July 27, 2017

The Honorable Jeff Sessions
Attorney General
U.S. Department of Justice
Washington, D.C.

The Honorable Rod J. Rosenstein
Deputy Attorney General
U.S. Department of Justice
Washington, D.C.

Dear Attorney General Sessions and Deputy Attorney General Rosenstein:

We are writing to you to request assistance in restoring public confidence in our nation's justice system and its investigators, specifically the Department of Justice (DOJ) and the Federal Bureau of Investigation (FBI). We need to enable these agencies to perform their necessary and important law enforcement and intelligence functions fully unhindered by politics. While we presume that the FBI's investigation into Russian influence has been subsumed into Special Counsel Robert Mueller's investigation, we are not confident that other matters related to the 2016 election and aftermath are similarly under investigation by Special Counsel Mueller. The unbalanced, uncertain, and seemingly unlimited focus of the special counsel's investigation has led many of our constituents to see a dual standard of justice that benefits only the powerful and politically well-connected. For this reason, we call on you to appoint a second special counsel[1] to investigate a plethora of matters connected to the 2016 election and its aftermath, including actions taken by previously public figures like Attorney General Loretta Lynch, FBI Director James Comey, and former Secretary of State Hillary Clinton.

Many Democrats and members of the Washington media previously called for a "special prosecutor" to investigate Russian influence on the election and connections with the Trump campaign. Not surprisingly, once you actually made the decision to appoint a special counsel, the calls for further investigations by congressional committees continued, focused on allegations that have heretofore produced no evidence of criminality, despite the fact that over a year has passed since the opening of the original FBI investigation. Political gamesmanship continues to

[1] See 28 CFR Part 600 – General Powers of Special Counsel.

saturate anything and everything associated with reactions to President Trump's executive decisions, and reveals the hypocrisy of those who refuse to allow the Special Counsel's investigation to proceed without undue political influence. It is an unfortunate state of affairs.

Your stated rationale for recommending Director Comey's termination as FBI Director was his mishandling of former Secretary Clinton's email investigation and associated public disclosures concerning the investigation's findings. We believe this was the correct decision. It is clear that Director Comey contributed to the politicization of the FBI's investigations by issuing his public statement, nominating himself as judge and jury, rather than permitting career DOJ prosecutors to make the final decision. But many other questions remain unanswered, due to Mr. Comey's premature and inappropriate decision, as well as the Obama Justice Department's refusal to respond to legitimate Congressional oversight. Last week, the Republican Members of this Committee sent a letter to the Justice Department, asking for responses to those unanswered inquiries.[2] These questions cannot, for history's sake and for the preservation of an impartial system of justice, be allowed to die on the vine.

It is therefore incumbent on this Committee, in our oversight capacity, to ensure that the agencies we oversee are above reproach and that the Justice Department, in particular, remains immune to accusations of politicization. Many Congressional entities have been engaged in oversight of Russian influence on the election, but a comprehensive investigation into the 2016 Presidential campaign and its aftermath must, similarly, be free of even the suggestion of political interference. The very core of our justice system demands as much. A second, newly-appointed special counsel will not be encumbered by these considerations, and will provide real value to the American people in offering an independent perspective on these extremely sensitive matters.

Our call for a special counsel is not made lightly. We have no interest in engendering more bad feelings and less confidence in the process or governmental institutions by the American people. Rather, our call is made on their behalf. It is meant to determine whether the criminal prosecution of any individual is warranted based on the solemn obligation to follow the facts wherever they lead and applying the law to those facts.

As we referenced above, Democrats and the mainstream media called for a special counsel to be appointed to investigate any Russian influence on President Trump's campaign. Their pleas were answered, but there are many questions that may be outside the scope of Special Counsel Mueller's investigation. This was clear following Mr. Comey's recent testimony to the Senate Intelligence Committee on June 8, 2017, which ignited renewed scrutiny of former

---

[2] *See* House Judiciary Committee letter of July 21, 2017 to Attorney General Sessions, requesting answers to multiple questions which remain unanswered or inadequately answered from the Obama Administration, *available at* https://judiciary.house.gov/wp-content/uploads/2017/07/072117_Letter-to-AG-Sessions.pdf?utm_source=House+Judiciary+Committee+Press+Releases&utm_campaign=fcab593157-EMAIL_CAMPAIGN_2017_07_21&utm_medium=email&utm_term=0_df41eba8fd-fcab593157-101865997.

Attorney General Loretta Lynch, and the actions she took to mislead the public concerning the investigation into the Clinton email investigation. Last year, this Committee inquired repeatedly about the circumstances surrounding that and other matters, but our inquiries were largely ignored.[3]

During his testimony, Mr. Comey referenced a meeting on the Phoenix airport tarmac between Ms. Lynch and former President Bill Clinton. Mr. Comey raised concerns about Ms. Lynch's conduct, and questioned her independence, stating:

> At one point, the attorney general had directed me not to call it an investigation, but instead to call it a matter, which confused me and concerned me. That was one of the bricks in the load that led me to conclude, 'I have to step away from the department if we're to close this case credibly.'[4]

In addition, in preparing to testify in front of Congress for a September 2015 hearing, Mr. Comey asked Ms. Lynch at the time whether she was prepared to refer to the Clinton investigation as just that, an "investigation." Mr. Comey testified that Ms. Lynch said, "Yes, but don't call it that, call it a matter." Mr. Comey retorted, "Why would I do that?" Ms. Lynch answered, "Just call it a matter."[5] Mr. Comey stated that he acquiesced, but it gave him "a queasy feeling," since it gave him the "impression that the attorney general was trying to align how we describe our work" with how the Clinton campaign was talking about it.[6]

Notwithstanding the fact that the FBI is the Federal Bureau of Investigation, and not the Federal Bureau of Matters, one is hard-pressed to understand why Ms. Lynch directed then-Director Comey to call the Clinton investigation a "matter" unless she intended to use such deceptive language to help wrongly persuade the American people that former Secretary Clinton was not, in fact, the subject of a full-scale FBI investigation, or to otherwise undermine the integrity of the investigation.

Following Director Comey's Senate Intelligence Committee testimony, Senator Dianne Feinstein was asked about the testimony while appearing on CNN's "State of the Union." Senator Feinstein stated, "I would have a queasy feeling too, though, to be candid with you, I think we need to know more about that, and there's only one way to know about it, and that's to have the Judiciary Committee take a look at that."[7]

---

[3] *Id.*

[4] Peter Baker, *The New York Times*, June 8, 2017, *available at* https://www.nytimes.com/2017/06/08/us/politics/comey-testimony-loretta-lynch.html.

[5] *Id.*

[6] Ed O'Keefe, *The Washington Post*, June 8, 2017, *available at* https://www.washingtonpost.com/politics/2017/live-updates/trump-white-house/james-comey-testimony-what-we-learn/comey-repeats-that-lynch-asked-him-to-describe-clinton-investigations-as-a-matter/?utm_term=.ccb1c193f596.

[7] Eli Watkins, "Feinstein: Judiciary Committee must 'step up and carry its weight'," *CNN.com*, June 11, 2017, *available at* http://www.cnn.com/2017/06/11/politics/dianne-feinstein-james-comey/index.html.

We share Senator Feinstein's and Mr. Comey's concerns – specifically, that during the midst of a contentious Presidential election, which was already rife with scandal arising from Secretary Clinton's mishandling of classified information, that our nation's chief law enforcement officer would instruct the FBI Director, her subordinate, to mislead the American public about the nature of the investigation. Following Ms. Lynch's directive to downplay the Clinton investigation as a "matter," Director Comey infamously terminated the Clinton investigation, stating, "[a]lthough there is evidence of potential violations of the statutes regarding the handling of classified information, our judgment is that no reasonable prosecutor would bring such a case."[8]

Mr. Comey's testimony has provided new evidence that Ms. Lynch may have used her position of authority to undermine the Clinton investigation. At any other point in history this accusation would entail a shock to the conscience of law abiding Americans who expect a DOJ free of political influence. We only have, however, an investigation into Russian influence on the 2016 election, including any ties to the Trump campaign. To limit our nation's insight into just this this single component of the 2016 election will only cause the special counsel's work to be derided as one-sided and incomplete. The special counsel's work must begin and end unimpeded by political motivations on either side of the aisle. For these reasons, the following points must also be fully investigated – ideally, via a second special counsel. This is imperative to regain the cherished trust and confidence in our undoubtedly distressed law enforcement and political institutions.

We call on a newly appointed special counsel to investigate, consistent with appropriate regulations, the following questions, many of which were previously posed by this Committee and remain unanswered:

1) Then-Attorney General Loretta Lynch directing Mr. Comey to mislead the American people on the nature of the Clinton investigation;

2) The shadow cast over our system of justice concerning Secretary Clinton and her involvement in mishandling classified information;

3) FBI and DOJ's investigative decisions related to former Secretary Clinton's email investigation, including the propriety and consequence of immunity deals given to potential Clinton co-conspirators Cheryl Mills, Heather Samuelson, John Bentel and possibly others;

4) The apparent failure of DOJ to empanel a grand jury to investigate allegations of mishandling of classified information by Hillary Clinton and her associates;

5) The Department of State and its employees' involvement in determining which communications of Secretary Clinton's and her associates to turn over for public scrutiny;

---

[8] Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System, July 5, 2016, *available at* https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system.

6) WikiLeaks disclosures concerning the Clinton Foundation and its potentially unlawful international dealings;

7) Connections between the Clinton campaign, or the Clinton Foundation, and foreign entities, including those from Russia and Ukraine;

8) Mr. Comey's knowledge of the purchase of Uranium One by the company Rosatom, whether the approval of the sale was connected to any donations made to the Clinton Foundation, and what role Secretary Clinton played in the approval of that sale that had national security ramifications;

9) Disclosures arising from unlawful access to the Democratic National Committee's (DNC) computer systems, including inappropriate collusion between the DNC and the Clinton campaign to undermine Senator Bernie Sanders' presidential campaign;

10) Post-election accusations by the President that he was wiretapped by the previous Administration, and whether Mr. Comey and Ms. Lynch had any knowledge of efforts made by any federal agency to unlawfully monitor communications of then-candidate Trump or his associates;

11) Selected leaks of classified information related to the unmasking of U.S. person identities incidentally collected upon by the intelligence community, including an assessment of whether anyone in the Obama Administration, including Mr. Comey, Ms. Lynch, Ms. Susan Rice, Ms. Samantha Power, or others, had any knowledge about the "unmasking" of individuals on then candidate-Trump's campaign team, transition team, or both;

12) Admitted leaks by Mr. Comey to Columbia University law professor, Daniel Richman, regarding conversations between Mr. Comey and President Trump, how the leaked information was purposefully released to lead to the appointment of a special counsel, and whether any classified information was included in the now infamous "Comey memos";

13) Mr. Comey's and the FBI's apparent reliance on "Fusion GPS" in its investigation of the Trump campaign, including the company's creation of a "dossier" of information about Mr. Trump, that dossier's commission and dissemination in the months before and after the 2016 election, whether the FBI paid anyone connected to the dossier, and the intelligence sources of Fusion GPS or any person or company working for Fusion GPS and its affiliates; and

14) Any and all potential leaks originated by Mr. Comey and provide to author Michael Schmidt dating back to 1993.

You have the ability now to right the ship for the American people so these investigations may proceed independently and impartially. The American public has a right to know the facts – all of them – surrounding the election and its aftermath. We urge you to appoint a second special counsel to ensure these troubling, unanswered questions are not relegated to the dustbin of history.

Sincerely,

Mike Johnson

John Rutherford

Martha Roby

John Ratcliffe

Trent Franks

Karen C. Handel

BOB GOODLATTE, Virginia
CHAIRMAN

F- JAMES SENSENBRENNER, JR., Wisconsin
LAMAR S. SMITH, Texas
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
RAÚL R. LABRADOR, Idaho
BLAKE FARENTHOLD, Texas
DOUG COLLINS, Georgia
RON DeSANTIS, Florida
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MIKE BISHOP, Michigan
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona

ONE HUNDRED FIFTEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–3951
http://www.house.gov/judiciary

JOHN CONYERS, JR., Michigan
RANKING MEMBER

JERROLD NADLER, New York
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
JUDY CHU, California
TED DEUTCH, Florida
LUIS V. GUTIÉRREZ, Illinois
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington

September 26, 2017

Dear Attorney General Sessions and Deputy Attorney General Rosenstein:

We write to renew this Committee's recent call for a second special counsel, to investigate matters which may be outside the scope of Special Counsel Robert Mueller's investigation.[1]  Such a step is even more critical given the recent revelation that former FBI Director James Comey had prepared a statement ending the investigation into former Secretary of State Hillary Clinton, before interviewing at least 17 key witnesses, including the former Secretary herself.[2]  At least one former career FBI supervisor has characterized this action as "so far out of bounds it's not even in the stadium," and "clearly communicating to [FBI executive staff] where the investigation was going to go."[3]

Among those witnesses the FBI failed to interview prior to the Director's preparation of his statement were Cheryl Mills and Heather Samuelson, both of whom were close Clinton aides with extensive knowledge of the facts surrounding the establishment of a private email server. Last year, this Committee inquired repeatedly of the Justice Department about the facts surrounding Ms. Mills' and Ms. Samuelson's involvement.[4]  Our inquiries were largely ignored. Recently, we wrote to you to request responses to those and other unanswered questions

---

[1] "Goodlatte & Judiciary Republicans Call for Second Special Counsel to Address Issues Outside the Scope of Special Counsel Mueller's Investigation," July 27, 2017, *available at* https://judiciary.house.gov/press-release/goodlatte-judiciary-republicans-call-second-special-counsel-address-issues-outside-scope-special-counsel-muellers-investigation/.

[2] Letter from Senators Grassley and Graham to FBI Director Christopher Wray, August 30, 2017, *available at* https://www.judiciary.senate.gov/imo/media/doc/2017-08-30%20CEG%20+%20LG%20to%20FBI%20(Comey%20Statement).pdf.

[3] "Did James Comey Break Rules by Drafting Hillary Clinton Statement? FBI Experts Are Divided," Newsweek, September 1, 2017, *available at* http://www.newsweek.com/comey-clinton-investigation-draft-statement-trump-658620.

[4] See, e.g., "Goodlatte Presses Justice Department on Secret Agreements with Top Clinton Advisors," October 3, 2016, *available at* https://judiciary.house.gov/press-release/goodlatte-presses-justice-department-secret-agreements-top-clinton-advisors/.

pertaining to the Clinton investigation.[5]  We have not received a response. However, as the most recent Comey revelations make clear, ignoring this problem will not make it go away.

As we pointed out at the time, both Ms. Mills and Ms. Samuelson received immunity for their cooperation in the Clinton investigation, but were nevertheless permitted to sit in on the interview of Secretary Clinton. That, coupled with the revelation that the Director had already drafted an exoneration statement, strongly suggests that the interview was a mere formality, and that the Director had already decided the case would be closed.

During our FBI Oversight hearing last year, Congressman John Ratcliffe questioned the Director about this very issue. In part, that exchange was as follows:

> Mr. RATCLIFFE. Director, did you make the decision not to recommend criminal charges relating to classified information before or after Hillary Clinton was interviewed by the FBI on July the 2nd?
>
> Mr. COMEY. After.
>
> Mr. RATCLIFFE. Okay. Then I am going to need your help in trying to understand how that is possible. I think there are a lot of prosecutors or former prosecutors that are shaking our heads at how that could be the case. Because if there was ever any real possibility that Hillary Clinton might be charged for something that she admitted to on July the 2nd, why would two of the central witnesses in a potential prosecution against her be allowed to sit in the same room to hear the testimony?[6]

Why, indeed. Perhaps it was because, just as the Comey revelation suggests, the decision had already been made – prior to the interview of Secretary Clinton, Ms. Mills, Ms. Samuelson, or any of the other 14 potential witnesses – that Secretary Clinton would not be charged with any crimes for her conduct. President Obama had indicated as much, by stating publicly at the time that although Secretary Clinton showed "carelessness" in conducting government business on a private server, she had no intent to endanger national security. Of course, Secretary Clinton's supposed lack of "intent to harm national security" is a red herring, since the law merely requires the government to show "gross negligence."[7]

---

[5] "Goodlatte & Judiciary Republicans Request Responses to Unanswered Oversight Letters Sent During Obama Administration," July 21, 2017, *available at* https://judiciary.house.gov/press-release/goodlatte-judiciary-republicans-request-responses-unanswered-oversight-letters-sent-obama-administration/.

[6] "Oversight of the Federal Bureau of Investigation," Hearing before the H. Comm. on Judiciary, September 28, 2016, p. 87, *available at* https://judiciary.house.gov/wp-content/uploads/2016/09/114-91_22125.pdf.

[7] 18 U.S.C. § 793(f). For a thorough account of this, see Andrew C. McCarthy, "It Wasn't Comey's Decision to Exonerate Hillary – It Was Obama's," *available at* http://www.nationalreview.com/corner/451053/not-comeys-decision-exonerate-hillary-obamas-decision.

Moreover, we note that not only did the former Director end the investigation prematurely -- and potentially at the direction, tacit or otherwise, of President Obama -- but he did so while declining to record the interviews of former Secretary Clinton or any of her close associates, as provided for by DOJ policy. The policy states:

> This policy establishes a presumption that the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and the United States Marshals Service (USMS) will electronically record statements made by individuals in their custody.

> This policy also encourages agents and prosecutors to consider electronic recording in investigative or other circumstances where the presumption does not apply. The policy encourages agents and prosecutors to consult with each other in such circumstances.[8]

Despite this, the DOJ and FBI declined to exercise their discretion to record the interview of former Secretary Clinton. This is truly inexplicable, given that the case was of keen national interest and importance, and involved a former Secretary of State and candidate for President of the United States who was accused of violating the Espionage Act. It only reinforces the sense that our nation's top law enforcement officials conspired to sweep the Clinton "matter" under the rug, and that there is, truly, one system for the powerful and politically well-connected, and another for everyone else.

In this case, it appears that Director Comey and other senior Justice Department and government officials may have pre-judged the "matter" before all the facts were known, thereby ensuring former Secretary Clinton would not be charged for her criminal activity. We implore you to name a second special counsel, to investigate this and other matters related to the 2016 election, including the conduct of the Justice Department regarding the investigation into Secretary Clinton's private email server.

Sincerely,

[8] "Attorney General Holder Announces Significant Policy Shift Concerning Electronic Recording of Statements," *available at* https://www.justice.gov/opa/pr/attorney-general-holder-announces-significant-policy-shift-concerning-electronic-recording (emphasis added).

Steve King

Lamar Smith

Raúl R. Labrador

Matt Gaetz

Ty Cole

Andy Biggs

Jim Jordan

Martha Roby

Mikey

John Ratcliffe

Blake Farr

John Rutherford



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General          *Washington, D.C. 20530*

The Honorable Robert W. Goodlatte
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

**NOV 1 3 2017**

Dear Chairman Goodlatte:

This responds to your letters dated July 27, 2017, and September 26, 2017, in which you and other Members request the appointment of a Special Counsel to investigate various matters, including the sale of Uranium One, alleged unlawful dealings related to the Clinton Foundation and other matters.  We are sending identical responses to the other Members who joined your letter.

As noted during our prior meeting in response to your letters, the Department of Justice (Department) takes seriously its responsibility to provide timely and accurate information to Congress on issues of public interest, and seeks to do so in a non-political manner that is consistent with the Department's litigation, law enforcement, and national security responsibilities.  Additionally, the Department's leadership has a duty to carefully evaluate the status of ongoing matters to ensure that justice is served and that the Department's communications with Congress are accurate and complete.

To further that goal, the Attorney General has directed senior federal prosecutors to evaluate certain issues raised in your letters.  These senior prosecutors will report directly to the Attorney General and the Deputy Attorney General, as appropriate, and will make recommendations as to whether any matters not currently under investigation should be opened, whether any matters currently under investigation require further resources, or whether any matters merit the appointment of a Special Counsel.  This will better enable the Attorney General and the Deputy Attorney General to more effectively evaluate and manage the caseload.  In conducting this review, all allegations will be reviewed in light of the Principles of Federal Prosecution. (USAM 9-27.000)

As you know, consistent with longstanding policy, the Department does not ordinarily confirm or deny investigations, and this letter should not be construed to do so.  While this policy can be frustrating, especially on matters of great public concern, it is necessary to ensure that the Department acts with fairness and thoughtfulness, and always in a manner consistent with the law and rules of the Department.

The Honorable Robert W. Goodlatte
Page Two

In addition, you must know the Department will never evaluate any matter except on the facts and the law. Professionalism, integrity, and public confidence in the Department's work is critical for us, and no priority is higher.

Your letter referenced various allegations related to the Federal Bureau of Investigation's (FBI) handling of the investigation into former Secretary of State Hillary Clinton's use of a personal email server. On January 12, 2017, the Department's Inspector General (IG) sent a letter to you and other Members advising that the IG's office was initiating a review of, among other things:

- Allegations that Department or FBI policies or procedures were not followed in connection with, or in actions leading up to or related to, the FBI Director's public announcement on July 5, 2016, and the Director's letters to Congress on October 28 and November 6, 2016, and that certain underlying investigative decisions were based on improper considerations;

- Allegations that the FBI Deputy Director should have been recused from participating in certain investigative matters;

- Allegations that Department and FBI employees improperly disclosed non-public information; and

- Allegations that decisions regarding the timing of the FBI's release of certain Freedom of Information Act documents on October 30 and November 1, 2016, and the use of a Twitter account to publicize the same, were influenced by improper considerations.

These investigations include issues raised in your letters. In addition, the Department has forwarded a copy of your letters to the IG so he can determine whether he should expand the scope of his investigation based on the information contained in those letters.

Once the IG's review is complete, the Department will assess what, if any, additional steps are necessary to address any issues identified by that review.

We will conduct this evaluation according to the highest standards of justice. We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Very truly yours,

Stephen E. Boyd
Assistant Attorney General



# Office of the Attorney General
## Washington, D. C. 20530

March 29, 2018

The Honorable Charles E. Grassley
Chairman
Committee on the Judiciary
United States Senate
Washington, DC  20510

The Honorable Robert W. Goodlatte
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC  20515

The Honorable Trey Gowdy
Chairman
Committee on Oversight and Government Reform
U.S. House of Representatives
Washington, DC  20515

Dear Chairmen Grassley, Goodlatte, and Gowdy:

I write in response to recent letters requesting the appointment of a Special
Counsel to review certain prosecutorial and investigative determinations made by the
Department of Justice in 2016 and 2017.  I take the concerns you raise seriously.

Since I took this office, it has been my goal to establish the highest standards
for our work and to maintain integrity and discipline throughout the Department of
Justice.  I know this Department, I respect it and its mission, and I love it and its
people.  I am deeply proud of the important work that the hardworking men and
women of the Department do every day to fight violent crime, reduce opioid
addictions and deaths, keep Americans safe from threats both foreign and domestic,
and uphold the rule of law.  We are determined to be worthy of the responsibility we
have been given and to earn the trust of Congress and the American people.  I
appreciate your support for the Department and our law enforcement community.

It is important that Congress and the American people have confidence in the
Department of Justice.  No institution is perfect.  That is why I and my senior
leadership team, including FBI Director Wray, are working every day to ensure the

The Honorable Charles E. Grassley
The Honorable Robert W. Goodlatte
The Honorable Trey Gowdy
Page 2

highest levels of performance and integrity as we carry out our fundamental mission.
We view Congress as partners in this effort.  However, the law requires that much of
the work we are doing to accomplish these goals remain confidential to ensure full
and fair process and just outcomes.  In that regard, as you know, the Department of
Justice cannot provide continuous updates on ongoing investigations, or confirm or
deny the existence thereof.  This is integral to our duty to adhere to the highest
ethical standards, and to ensure that prosecutorial and investigative decisions are
made without political bias or favoritism—in either direction.

As you are aware, I have asked the Department's Inspector General, Michael
E. Horowitz, to review certain matters that you and some members of your
committees have raised in recent and previous letters.  In addition to his ongoing
investigation, the Inspector General has now confirmed that he has opened a review
into the Department's compliance with certain legal requirements and Department
and FBI policies and procedures with respect to certain applications filed with the
U.S. Foreign Intelligence Surveillance Court.

Congress created the Department's Office of the Inspector General explicitly
for the purpose of, among other things, investigating alleged violations of criminal
and civil laws by Department employees, including actions taken by former
employees after they have left government service.  The Inspector General's
jurisdiction extends not only to allegations of legal violations, but also to allegations
that Department employees violated established policies as well.

To carry out these duties, Title 5 of the United States Code provides the
Inspector General with broad discretion and significant investigative powers.  The
office currently employs approximately 470 staff, a significant number of whom are
lawyers, auditors, and investigators who may exercise wide discretion on matters
under their jurisdiction.  If the Inspector General finds evidence of criminal
wrongdoing, he may refer it to a United States Attorney who can then convene a
grand jury or take other appropriate actions.  To be clear, the Inspector General has
the authority to investigate allegations of wrongdoing, collect evidence through
subpoena, and develop cases for presentation to the Attorney General and the Deputy
Attorney General for prosecution or other action.  The Inspector General also may,
under appropriate circumstances, make information available to the public even if no
criminal or disciplinary action is recommended. In contrast, this type of information
would not normally be publicly available after the conclusion of a traditional
criminal investigation.

The Honorable Charles E. Grassley
The Honorable Robert W. Goodlatte
The Honorable Trey Gowdy
Page 3

Pursuant to Department of Justice regulations, the appointment of a Special Counsel, by design, is reserved for use in only the most "extraordinary circumstances." 28 C.F.R. § 600.1(a). Under the regulations, any Special Counsel must be "selected from outside the United States Government." *Id.* § 600.3(a). To justify such an appointment, the Attorney General would need to conclude that "the public interest would be served by removing a large degree of responsibility for the matter from the Department of Justice." 64 Fed. Reg. 37038, 37038 (July 9, 1999). The Department has successfully investigated and prosecuted many high-profile, resource-intensive matters since the regulations were promulgated in 1999, but the regulations' standard has been found to be satisfied on only two occasions.

The regulations recognize that, when presented with a matter "that might warrant consideration of the appointment of a Special Counsel," the Attorney General may conclude that the circumstances do not justify such a departure "from the normal processes of the Department," and that he may instead determine that other "appropriate steps" can be taken to mitigate any conflicts of interest. 28 C.F.R. § 600.2(c). Thus, in high-profile circumstances involving other politically sensitive matters, it has been more common to make special arrangements within the Department to ensure that actual or apparent conflicts can be avoided, while experienced and accountable prosecutors conduct an efficient and appropriate investigation that comports with the interests of justice and with the public interest.

As noted in Assistant Attorney General Stephen E. Boyd's November 13, 2017, letter to the House Committee on the Judiciary, I already have directed senior federal prosecutors to evaluate certain issues previously raised by the Committee. In that letter, Mr. Boyd stated:

> "These senior prosecutors will report directly to the Attorney General and the Deputy Attorney General, as appropriate, and will make recommendations as to whether any matters not currently under investigation should be opened, whether any matters currently under investigation require further resources, or whether any matters merit the appointment of a Special Counsel."

Specifically, I asked United States Attorney John W. Huber to lead this effort. Mr. Huber is an experienced federal prosecutor who was twice confirmed unanimously by the Senate as United States Attorney for the District of Utah in 2015 and 2017. Mr. Huber previously served in leadership roles within the U.S. Attorney's Office as the National Security Section Chief and the Executive Assistant U.S. Attorney. He has personally prosecuted a number of high-profile cases and coordinated task forces focused against violent crime and terrorism. This work

The Honorable Charles E. Grassley
The Honorable Robert W. Goodlatte
The Honorable Trey Gowdy
Page 4

garnered commendations from the highest levels of the Department over the course
of two administrations.

Mr. Huber is conducting his work from outside the Washington, D.C. area
and in cooperation with the Inspector General. The additional matters raised in your
March 6, 2018, letter fall within the scope of his existing mandate, and I am
confident that Mr. Huber's review will include a full, complete, and objective
evaluation of these matters in a manner that is consistent with the law and the facts.
I receive regular updates from Mr. Huber and upon the conclusion of his review, will
receive his recommendations as to whether any matters not currently under
investigation should be opened, whether any matters currently under investigation
require further resources, or whether any matters merit the appointment of a Special
Counsel.

We understand that the Department is not above criticism and it can never be
that the Department conceals errors when they occur. I expect every person in this
Department to adhere to the highest level of integrity, ethics, and professionalism. If
anyone falls short of these high standards, I will fulfill my responsibility to take
necessary action to protect the integrity of our work.

Thank you for your leadership on these and other matters. I am making your
letters on this and related issues available to the Department's leadership, Inspector
General Horowitz, and Mr. Huber for such action as is appropriate. Please contact
me personally if you have additional questions or concerns.

Sincerely,

Jefferson B. Sessions III
Attorney General

cc:   The Honorable Dianne Feinstein
      Ranking Member, Senate Committee on the Judiciary

      The Honorable Jerry Nadler
      Ranking Member, House Committee on the Judiciary

      The Honorable Elijah Cummings
      Ranking Member, House Committee on Oversight and Government Reform

Exhibit B



November 22, 2017

**VIA ONLINE PORTAL**

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
U.S. Department of Justice
1425 New York Avenue NW, Suite 11050
Washington, DC 20530-0001
Via FOIAOnline

Re: Freedom of Information Act Request

Dear Ms. Day:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of the Department of Justice (DOJ), 28 C.F.R. Part 16, American Oversight makes the following request for records.

Since taking office in January, President Trump has regularly attacked Hillary Clinton and called on DOJ to investigate various allegations against Ms. Clinton.[1] One such allegation has included inappropriate influence in the 2010 acquisition of Uranium One by Rosatom, the Russian nuclear energy agency.[2] Responding both to the president and letters from House Judiciary Committee Chairman Bob Goodlatte, DOJ is now considering the appointment of a second special counsel to investigate Ms. Clinton.[3] In the meantime, Attorney General Jeff Sessions is under regular scrutiny from the president and even the Senate Majority leader is suggesting that Mr. Sessions replace the

---

[1] *See* Matthew Nussbaum & Tara Palmeri, *Trump Can't Stop Obsessing About the Clintons*, POLITICO (Mar. 28, 2017, 5:01 PM), https://www.politico.com/story/2017/03/trump-hillary-bill-clinton-236602; Abigail Abrams, *President Trump Attacked Hillary Clinton over Her Emails. Again.*, TIME, June 15, 2017, http://time.com/4820708/donald-trump-russia-investigation-hillary-clinton-obstruction/; Associated Press, *Trump Tweets Fresh Attacks on Democrats and Hillary Clinton Amid Reports of Looming Charges in Russia Probe*, L.A. TIMES, Oct. 29, 2017, http://www.latimes.com/politics/la-pol-updates-trump-tweets-russia-republican-anger-htmlstory.html.
[2] Lauren Carroll, *Fact-Checking Donald Trump's Tweets About Hillary Clinton and Russia*, POLITIFACT (Mar. 28, 2017, 4:00 PM), http://www.politifact.com/truth-o-meter/article/2017/mar/28/fact-checking-donald-trumps-tweets-about-hillary-c/.
[3] Mat Zapotosky, *Sessions Considering Second Special Counsel to Investigate Republican Concerns, Letter Shows*, WASH. POST, Nov. 13, 2017, https://www.washingtonpost.com/world/national-security/sessions-considering-second-special-counsel-to-investigate-republican-concerns-letter-shows/2017/11/13/bc92ef3c-c8d2-11e7-b0cf-7689a9f2d84e_story.html?utm_term=.fa50162b4a3d.



embattled Republican nominee in the race to fill his former seat in the Senate.[4] American Oversight submits this request to shed light on whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities.

<u>Requested Records</u>

American Oversight requests that the Office of the Attorney General and the Office of Legislative Affairs produce the following within twenty business days:

> All records relating to the drafting of the November 13, 2017 letter signed by Assistant Attorney General Stephen Boyd, attached for your convenience, responding to the two letters from Congressman Robert Goodlatte dated July 27, 2017, and September 26, 2017, also attached.

> Please provide all responsive records from July 27, 2017, through the date the search is conducted.

In addition to the records requested above, American Oversight also requests records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If DOJ uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.** Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[5] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to**

---

[4] Brian Naylor et al., *McConnell Talks Up Sessions As Write-In Candidate to Replace Roy Moore*, NPR (Nov. 14, 2017, 12:08 PM), https://www.npr.org/2017/11/14/564071391/ryan-sessions-add-to-gop-voices-saying-moore-accusers-are-credible.

[5] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

DOJ-17-0538

official systems or if officials have, through negligence or willfulness, failed to meet their obligations.[6]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DOJ's prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.**[7] **Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but DOJ's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that DOJ use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.**

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[8] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[9] Moreover, the *Vaughn* index "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing

---

[6] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work-related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[7] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

[8] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).

[9] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

DOJ-17-0538

the sought-after information."[10] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[11]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[12] Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, DOJ is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and DOJ can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k), American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way.[13] Moreover, the request is primarily and fundamentally for non-commercial purposes.[14]

---

[10] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphasis in original).

[11] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

[12] *Mead Data Central*, 566 F.2d at 261.

[13] 28 C.F.R. § 16.10(k)(2).

[14] *Id.*

DOJ-17-0538

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[15] The requested records are directly related to the work of the highest levels of leadership at DOJ. There is significant interest in the subject of these records, both from the American people at large as well as the U.S. Congress.[16] The requested records will help American Oversight and the general public understand whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available. As noted, the subject of this request is a matter of public interest, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[17] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[18] American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, after receiving records regarding an ethics waiver received by a

---

[15] 28 C.F.R. § 16.10(k)(2)(i), (ii)(A)–(B).

[16] *See* Abrams, *supra* note 1; Associated Press, *supra* note 1; Carroll, *supra* note 2; *Uranium One Probe: Order to Lift 'Gag' on Russia Informant Came from Trump, Source Says*, FOX NEWS, Oct. 26, 2017, http://www.foxnews.com/politics/2017/10/26/uranium-one-probe-order-to-lift-gag-on-russia-informant-came-from-trump-source-says.html; Naylor et al., *supra* note 4; Nussbaum & Palmeri, *supra* note 1; Michael S. Schmidt & Maggie Haberman, *Justice Dept. to Weigh Inquiry Into Clinton Foundation*, N.Y. TIMES, Nov. 13, 2017, https://www.nytimes.com/2017/11/13/us/politics/justice-department-uranium-one-special-counsel.html; Eileen Sullivan, *What Is the Uranium One Deal and Why Does the Trump Administration Care So Much?*, N.Y. TIMES, Nov. 14, 2017, https://www.nytimes.com/2017/11/14/us/politics/uranium-one-hillary-clinton.html; The Washington Post, *Sessions Replacing Moore Could Solve Trump's Mueller Problem*, AL.COM (Nov. 14, 2017, 11:10 AM), http://www.al.com/opinion/index.ssf/2017/11/sessions_replacing_moore_could.html; Katie Bo Williams, *Judiciary Chairman Hints at Dissatisfaction with Sessions*, THE HILL (Nov. 14, 2017, 10:31 AM), http://thehill.com/homenews/administration/360265-judiciary-chairman-hints-at-dissatisfaction-with-sessions; Zapotosky, *supra* note 3.

[17] 28 C.F.R. § 16.10(k)(iii)(A)–(B).

[18] American Oversight currently has approximately 11,700 page likes on Facebook, and 37,400 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/ (last visited Nov. 20, 2017); American Oversight (@weareoversight), TWITTER, https://twitter.com/weareoversight (last visited Nov. 20, 2017).

DOJ-17-0538

senior DOJ attorney,[19] American Oversight promptly posted the records to its website and published an analysis of what the records reflected about DOJ's process for ethics waivers.[20] As another example, American Oversight has a project called "Audit the Wall," where the organization is gathering and analyzing information and commenting on public releases of information related to the administration's proposed construction of a barrier along the U.S.-Mexico border.[21]

Accordingly, American Oversight qualifies for a fee waiver.

<u>Conclusion</u>

We share a common mission to promote transparency in government. American Oversight looks forward to working with DOJ on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact Cerissa Cafasso at foia@americanoversight.org or 202.869.5246. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

---

[19] *DOJ Civil Division Response Noel Francisco Compliance,* AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance.
[20] *Francisco & the Travel Ban: What We Learned from the DOJ Documents,* AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.
[21] *Audit the Wall,* AMERICAN OVERSIGHT, www.auditthewall.org.

DOJ-17-0538



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General          *Washington, D.C. 20530*

The Honorable Robert W. Goodlatte          **NOV 1 3 2017**
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

Dear Chairman Goodlatte:

This responds to your letters dated July 27, 2017, and September 26, 2017, in which you and other Members request the appointment of a Special Counsel to investigate various matters, including the sale of Uranium One, alleged unlawful dealings related to the Clinton Foundation and other matters. We are sending identical responses to the other Members who joined your letter.

As noted during our prior meeting in response to your letters, the Department of Justice (Department) takes seriously its responsibility to provide timely and accurate information to Congress on issues of public interest, and seeks to do so in a non-political manner that is consistent with the Department's litigation, law enforcement, and national security responsibilities. Additionally, the Department's leadership has a duty to carefully evaluate the status of ongoing matters to ensure that justice is served and that the Department's communications with Congress are accurate and complete.

To further that goal, the Attorney General has directed senior federal prosecutors to evaluate certain issues raised in your letters. These senior prosecutors will report directly to the Attorney General and the Deputy Attorney General, as appropriate, and will make recommendations as to whether any matters not currently under investigation should be opened, whether any matters currently under investigation require further resources, or whether any matters merit the appointment of a Special Counsel. This will better enable the Attorney General and the Deputy Attorney General to more effectively evaluate and manage the caseload. In conducting this review, all allegations will be reviewed in light of the Principles of Federal Prosecution. (USAM 9-27.000)

As you know, consistent with longstanding policy, the Department does not ordinarily confirm or deny investigations, and this letter should not be construed to do so. While this policy can be frustrating, especially on matters of great public concern, it is necessary to ensure that the Department acts with fairness and thoughtfulness, and always in a manner consistent with the law and rules of the Department.

The Honorable Robert W. Goodlatte
Page Two

In addition, you must know the Department will never evaluate any matter except on the facts and the law. Professionalism, integrity, and public confidence in the Department's work is critical for us, and no priority is higher.

Your letter referenced various allegations related to the Federal Bureau of Investigation's (FBI) handling of the investigation into former Secretary of State Hillary Clinton's use of a personal email server. On January 12, 2017, the Department's Inspector General (IG) sent a letter to you and other Members advising that the IG's office was initiating a review of, among other things:

- Allegations that Department or FBI policies or procedures were not followed in connection with, or in actions leading up to or related to, the FBI Director's public announcement on July 5, 2016, and the Director's letters to Congress on October 28 and November 6, 2016, and that certain underlying investigative decisions were based on improper considerations;

- Allegations that the FBI Deputy Director should have been recused from participating in certain investigative matters;

- Allegations that Department and FBI employees improperly disclosed non-public information; and

- Allegations that decisions regarding the timing of the FBI's release of certain Freedom of Information Act documents on October 30 and November 1, 2016, and the use of a Twitter account to publicize the same, were influenced by improper considerations.

These investigations include issues raised in your letters. In addition, the Department has forwarded a copy of your letters to the IG so he can determine whether he should expand the scope of his investigation based on the information contained in those letters.

Once the IG's review is complete, the Department will assess what, if any, additional steps are necessary to address any issues identified by that review.

We will conduct this evaluation according to the highest standards of justice. We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Very truly yours,

Stephen E. Boyd
Assistant Attorney General

BOB GOODLATTE, Virginia
CHAIRMAN

F. JAMES SENSENBRENNER, JR., Wisconsin
LAMAR S. SMITH, Texas
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
RAÚL R. LABRADOR, Idaho
BLAKE FARENTHOLD, Texas
DOUG COLLINS, Georgia
RON DeSANTIS, Florida
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona
JOHN RUTHERFORD, Florida
KAREN HANDEL, Georgia

JOHN CONYERS, JR., Michigan
RANKING MEMBER

JERROLD NADLER, New York
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
TED DEUTCH, Florida
LUIS V. GUTIÉRREZ, Illinois
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
BRAD SCHNEIDER, Illinois

ONE HUNDRED FIFTEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–3951
http://www.house.gov/judiciary

July 27, 2017

The Honorable Jeff Sessions
Attorney General
U.S. Department of Justice
Washington, D.C.

The Honorable Rod J. Rosenstein
Deputy Attorney General
U.S. Department of Justice
Washington, D.C.

Dear Attorney General Sessions and Deputy Attorney General Rosenstein:

We are writing to you to request assistance in restoring public confidence in our nation's justice system and its investigators, specifically the Department of Justice (DOJ) and the Federal Bureau of Investigation (FBI). We need to enable these agencies to perform their necessary and important law enforcement and intelligence functions fully unhindered by politics. While we presume that the FBI's investigation into Russian influence has been subsumed into Special Counsel Robert Mueller's investigation, we are not confident that other matters related to the 2016 election and aftermath are similarly under investigation by Special Counsel Mueller. The unbalanced, uncertain, and seemingly unlimited focus of the special counsel's investigation has led many of our constituents to see a dual standard of justice that benefits only the powerful and politically well-connected. For this reason, we call on you to appoint a second special counsel[1] to investigate a plethora of matters connected to the 2016 election and its aftermath, including actions taken by previously public figures like Attorney General Loretta Lynch, FBI Director James Comey, and former Secretary of State Hillary Clinton.

Many Democrats and members of the Washington media previously called for a "special prosecutor" to investigate Russian influence on the election and connections with the Trump campaign. Not surprisingly, once you actually made the decision to appoint a special counsel, the calls for further investigations by congressional committees continued, focused on allegations that have heretofore produced no evidence of criminality, despite the fact that over a year has passed since the opening of the original FBI investigation. Political gamesmanship continues to

---

[1] See 28 CFR Part 600 – General Powers of Special Counsel.

saturate anything and everything associated with reactions to President Trump's executive decisions, and reveals the hypocrisy of those who refuse to allow the Special Counsel's investigation to proceed without undue political influence. It is an unfortunate state of affairs.

Your stated rationale for recommending Director Comey's termination as FBI Director was his mishandling of former Secretary Clinton's email investigation and associated public disclosures concerning the investigation's findings. We believe this was the correct decision. It is clear that Director Comey contributed to the politicization of the FBI's investigations by issuing his public statement, nominating himself as judge and jury, rather than permitting career DOJ prosecutors to make the final decision. But many other questions remain unanswered, due to Mr. Comey's premature and inappropriate decision, as well as the Obama Justice Department's refusal to respond to legitimate Congressional oversight. Last week, the Republican Members of this Committee sent a letter to the Justice Department, asking for responses to those unanswered inquiries.[2] These questions cannot, for history's sake and for the preservation of an impartial system of justice, be allowed to die on the vine.

It is therefore incumbent on this Committee, in our oversight capacity, to ensure that the agencies we oversee are above reproach and that the Justice Department, in particular, remains immune to accusations of politicization. Many Congressional entities have been engaged in oversight of Russian influence on the election, but a comprehensive investigation into the 2016 Presidential campaign and its aftermath must, similarly, be free of even the suggestion of political interference. The very core of our justice system demands as much. A second, newly-appointed special counsel will not be encumbered by these considerations, and will provide real value to the American people in offering an independent perspective on these extremely sensitive matters.

Our call for a special counsel is not made lightly. We have no interest in engendering more bad feelings and less confidence in the process or governmental institutions by the American people. Rather, our call is made on their behalf. It is meant to determine whether the criminal prosecution of any individual is warranted based on the solemn obligation to follow the facts wherever they lead and applying the law to those facts.

As we referenced above, Democrats and the mainstream media called for a special counsel to be appointed to investigate any Russian influence on President Trump's campaign. Their pleas were answered, but there are many questions that may be outside the scope of Special Counsel Mueller's investigation. This was clear following Mr. Comey's recent testimony to the Senate Intelligence Committee on June 8, 2017, which ignited renewed scrutiny of former

---

[2] *See* House Judiciary Committee letter of July 21, 2017 to Attorney General Sessions, requesting answers to multiple questions which remain unanswered or inadequately answered from the Obama Administration, *available at* https://judiciary.house.gov/wp-content/uploads/2017/07/072117_Letter-to-AG-Sessions.pdf?utm_source=House+Judiciary+Committee+Press+Releases&utm_campaign=fcab593157-EMAIL_CAMPAIGN_2017_07_21&utm_medium=email&utm_term=0_df41eba8fd-fcab593157-101865997.

Attorney General Loretta Lynch, and the actions she took to mislead the public concerning the investigation into the Clinton email investigation. Last year, this Committee inquired repeatedly about the circumstances surrounding that and other matters, but our inquiries were largely ignored.[3]

During his testimony, Mr. Comey referenced a meeting on the Phoenix airport tarmac between Ms. Lynch and former President Bill Clinton. Mr. Comey raised concerns about Ms. Lynch's conduct, and questioned her independence, stating:

> At one point, the attorney general had directed me not to call it an investigation, but instead to call it a matter, which confused me and concerned me. That was one of the bricks in the load that led me to conclude, 'I have to step away from the department if we're to close this case credibly.'[4]

In addition, in preparing to testify in front of Congress for a September 2015 hearing, Mr. Comey asked Ms. Lynch at the time whether she was prepared to refer to the Clinton investigation as just that, an "investigation." Mr. Comey testified that Ms. Lynch said, "Yes, but don't call it that, call it a matter." Mr. Comey retorted, "Why would I do that?" Ms. Lynch answered, "Just call it a matter."[5] Mr. Comey stated that he acquiesced, but it gave him "a queasy feeling," since it gave him the "impression that the attorney general was trying to align how we describe our work" with how the Clinton campaign was talking about it.[6]

Notwithstanding the fact that the FBI is the Federal Bureau of Investigation, and not the Federal Bureau of Matters, one is hard-pressed to understand why Ms. Lynch directed then-Director Comey to call the Clinton investigation a "matter" unless she intended to use such deceptive language to help wrongly persuade the American people that former Secretary Clinton was not, in fact, the subject of a full-scale FBI investigation, or to otherwise undermine the integrity of the investigation.

Following Director Comey's Senate Intelligence Committee testimony, Senator Dianne Feinstein was asked about the testimony while appearing on CNN's "State of the Union." Senator Feinstein stated, "I would have a queasy feeling too, though, to be candid with you, I think we need to know more about that, and there's only one way to know about it, and that's to have the Judiciary Committee take a look at that."[7]

---

[3] *Id.*

[4] Peter Baker, *The New York Times*, June 8, 2017, *available at*
https://www.nytimes.com/2017/06/08/us/politics/comey-testimony-loretta-lynch.html.
[5] *Id.*

[6] Ed O'Keefe, *The Washington Post*, June 8, 2017, *available at* https://www.washingtonpost.com/politics/2017/live-updates/trump-white-house/james-comey-testimony-what-we-learn/comey-repeats-that-lynch-asked-him-to-describe-clinton-investigations-as-a-matter/?utm_term=.ccb1c193f596.

[7] Eli Watkins, "Feinstein: Judiciary Committee must 'step up and carry its weight'," *CNN.com*, June 11, 2017, *available at* http://www.cnn.com/2017/06/11/politics/dianne-feinstein-james-comey/index.html.

We share Senator Feinstein's and Mr. Comey's concerns – specifically, that during the midst of a contentious Presidential election, which was already rife with scandal arising from Secretary Clinton's mishandling of classified information, that our nation's chief law enforcement officer would instruct the FBI Director, her subordinate, to mislead the American public about the nature of the investigation. Following Ms. Lynch's directive to downplay the Clinton investigation as a "matter," Director Comey infamously terminated the Clinton investigation, stating, "[a]lthough there is evidence of potential violations of the statutes regarding the handling of classified information, our judgment is that no reasonable prosecutor would bring such a case."[8]

Mr. Comey's testimony has provided new evidence that Ms. Lynch may have used her position of authority to undermine the Clinton investigation. At any other point in history this accusation would entail a shock to the conscience of law abiding Americans who expect a DOJ free of political influence. We only have, however, an investigation into Russian influence on the 2016 election, including any ties to the Trump campaign. To limit our nation's insight into just this this single component of the 2016 election will only cause the special counsel's work to be derided as one-sided and incomplete. The special counsel's work must begin and end unimpeded by political motivations on either side of the aisle. For these reasons, the following points must also be fully investigated – ideally, via a second special counsel. This is imperative to regain the cherished trust and confidence in our undoubtedly distressed law enforcement and political institutions.

We call on a newly appointed special counsel to investigate, consistent with appropriate regulations, the following questions, many of which were previously posed by this Committee and remain unanswered:

1) Then-Attorney General Loretta Lynch directing Mr. Comey to mislead the American people on the nature of the Clinton investigation;

2) The shadow cast over our system of justice concerning Secretary Clinton and her involvement in mishandling classified information;

3) FBI and DOJ's investigative decisions related to former Secretary Clinton's email investigation, including the propriety and consequence of immunity deals given to potential Clinton co-conspirators Cheryl Mills, Heather Samuelson, John Bentel and possibly others;

4) The apparent failure of DOJ to empanel a grand jury to investigate allegations of mishandling of classified information by Hillary Clinton and her associates;

5) The Department of State and its employees' involvement in determining which communications of Secretary Clinton's and her associates to turn over for public scrutiny;

---

[8] Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System, July 5, 2016, *available at* https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system.

6) WikiLeaks disclosures concerning the Clinton Foundation and its potentially unlawful international dealings;

7) Connections between the Clinton campaign, or the Clinton Foundation, and foreign entities, including those from Russia and Ukraine;

8) Mr. Comey's knowledge of the purchase of Uranium One by the company Rosatom, whether the approval of the sale was connected to any donations made to the Clinton Foundation, and what role Secretary Clinton played in the approval of that sale that had national security ramifications;

9) Disclosures arising from unlawful access to the Democratic National Committee's (DNC) computer systems, including inappropriate collusion between the DNC and the Clinton campaign to undermine Senator Bernie Sanders' presidential campaign;

10) Post-election accusations by the President that he was wiretapped by the previous Administration, and whether Mr. Comey and Ms. Lynch had any knowledge of efforts made by any federal agency to unlawfully monitor communications of then-candidate Trump or his associates;

11) Selected leaks of classified information related to the unmasking of U.S. person identities incidentally collected upon by the intelligence community, including an assessment of whether anyone in the Obama Administration, including Mr. Comey, Ms. Lynch, Ms. Susan Rice, Ms. Samantha Power, or others, had any knowledge about the "unmasking" of individuals on then candidate-Trump's campaign team, transition team, or both;

12) Admitted leaks by Mr. Comey to Columbia University law professor, Daniel Richman, regarding conversations between Mr. Comey and President Trump, how the leaked information was purposefully released to lead to the appointment of a special counsel, and whether any classified information was included in the now infamous "Comey memos";

13) Mr. Comey's and the FBI's apparent reliance on "Fusion GPS" in its investigation of the Trump campaign, including the company's creation of a "dossier" of information about Mr. Trump, that dossier's commission and dissemination in the months before and after the 2016 election, whether the FBI paid anyone connected to the dossier, and the intelligence sources of Fusion GPS or any person or company working for Fusion GPS and its affiliates; and

14) Any and all potential leaks originated by Mr. Comey and provide to author Michael Schmidt dating back to 1993.

You have the ability now to right the ship for the American people so these investigations may proceed independently and impartially. The American public has a right to know the facts – all of them – surrounding the election and its aftermath. We urge you to appoint a second special counsel to ensure these troubling, unanswered questions are not relegated to the dustbin of history.

Sincerely,

Mike Johnson

John Rutherford

Martha Roby

John Ratcliffe

Trent Franks

Karen C. Handel

BOB GOODLATTE, Virginia
CHAIRMAN

F. JAMES SENSENBRENNER, JR., Wisconsin
LAMAR S. SMITH, Texas
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
RAÚL R. LABRADOR, Idaho
BLAKE FARENTHOLD, Texas
DOUG COLLINS, Georgia
RON DeSANTIS, Florida
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MIKE BISHOP, Michigan
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona

ONE HUNDRED FIFTEENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–3951
http://www.house.gov/judiciary

JOHN CONYERS, JR., Michigan
RANKING MEMBER

JERROLD NADLER, New York
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
JUDY CHU, California
TED DEUTCH, Florida
LUIS V. GUTIÉRREZ, Illinois
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington

September 26, 2017

Dear Attorney General Sessions and Deputy Attorney General Rosenstein:

We write to renew this Committee's recent call for a second special counsel, to investigate matters which may be outside the scope of Special Counsel Robert Mueller's investigation.[1] Such a step is even more critical given the recent revelation that former FBI Director James Comey had prepared a statement ending the investigation into former Secretary of State Hillary Clinton, before interviewing at least 17 key witnesses, including the former Secretary herself.[2] At least one former career FBI supervisor has characterized this action as "so far out of bounds it's not even in the stadium," and "clearly communicating to [FBI executive staff] where the investigation was going to go."[3]

Among those witnesses the FBI failed to interview prior to the Director's preparation of his statement were Cheryl Mills and Heather Samuelson, both of whom were close Clinton aides with extensive knowledge of the facts surrounding the establishment of a private email server. Last year, this Committee inquired repeatedly of the Justice Department about the facts surrounding Ms. Mills' and Ms. Samuelson's involvement.[4] Our inquiries were largely ignored. Recently, we wrote to you to request responses to those and other unanswered questions

---

[1] "Goodlatte & Judiciary Republicans Call for Second Special Counsel to Address Issues Outside the Scope of Special Counsel Mueller's Investigation," July 27, 2017, *available at* https://judiciary.house.gov/press-release/goodlatte-judiciary-republicans-call-second-special-counsel-address-issues-outside-scope-special-counsel-muellers-investigation/.

[2] Letter from Senators Grassley and Graham to FBI Director Christopher Wray, August 30, 2017, *available at* https://www.judiciary.senate.gov/imo/media/doc/2017-08-30%20CEG%20+%20LG%20to%20FBI%20(Comey%20Statement).pdf.

[3] "Did James Comey Break Rules by Drafting Hillary Clinton Statement? FBI Experts Are Divided," Newsweek, September 1, 2017, *available at* http://www.newsweek.com/comey-clinton-investigation-draft-statement-trump-658620.

[4] See, e.g., "Goodlatte Presses Justice Department on Secret Agreements with Top Clinton Advisors," October 3, 2016, *available at* https://judiciary.house.gov/press-release/goodlatte-presses-justice-department-secret-agreements-top-clinton-advisors/.

pertaining to the Clinton investigation.[5] We have not received a response. However, as the most recent Comey revelations make clear, ignoring this problem will not make it go away.

As we pointed out at the time, both Ms. Mills and Ms. Samuelson received immunity for their cooperation in the Clinton investigation, but were nevertheless permitted to sit in on the interview of Secretary Clinton. That, coupled with the revelation that the Director had already drafted an exoneration statement, strongly suggests that the interview was a mere formality, and that the Director had already decided the case would be closed.

During our FBI Oversight hearing last year, Congressman John Ratcliffe questioned the Director about this very issue. In part, that exchange was as follows:

> Mr. RATCLIFFE. Director, did you make the decision not to recommend criminal charges relating to classified information before or after Hillary Clinton was interviewed by the FBI on July the 2nd?

> Mr. COMEY. After.

> Mr. RATCLIFFE. Okay. Then I am going to need your help in trying to understand how that is possible. I think there are a lot of prosecutors or former prosecutors that are shaking our heads at how that could be the case. Because if there was ever any real possibility that Hillary Clinton might be charged for something that she admitted to on July the 2nd, why would two of the central witnesses in a potential prosecution against her be allowed to sit in the same room to hear the testimony?[6]

Why, indeed. Perhaps it was because, just as the Comey revelation suggests, the decision had already been made – prior to the interview of Secretary Clinton, Ms. Mills, Ms. Samuelson, or any of the other 14 potential witnesses – that Secretary Clinton would not be charged with any crimes for her conduct. President Obama had indicated as much, by stating publicly at the time that although Secretary Clinton showed "carelessness" in conducting government business on a private server, she had no intent to endanger national security. Of course, Secretary Clinton's supposed lack of "intent to harm national security" is a red herring, since the law merely requires the government to show "gross negligence."[7]

---

[5] "Goodlatte & Judiciary Republicans Request Responses to Unanswered Oversight Letters Sent During Obama Administration," July 21, 2017, *available at* https://judiciary.house.gov/press-release/goodlatte-judiciary-republicans-request-responses-unanswered-oversight-letters-sent-obama-administration/.

[6] "Oversight of the Federal Bureau of Investigation," Hearing before the H. Comm. on Judiciary, September 28, 2016, p. 87, *available at* https://judiciary.house.gov/wp-content/uploads/2016/09/114-91_22125.pdf.

[7] 18 U.S.C. § 793(f). For a thorough account of this, see Andrew C. McCarthy, "It Wasn't Comey's Decision to Exonerate Hillary – It Was Obama's," *available at* http://www.nationalreview.com/corner/451053/not-comeys-decision-exonerate-hillary-obamas-decision.

Moreover, we note that not only did the former Director end the investigation prematurely -- and potentially at the direction, tacit or otherwise, of President Obama -- but he did so while declining to record the interviews of former Secretary Clinton or any of her close associates, as provided for by DOJ policy. The policy states:

> This policy establishes a presumption that the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and the United States Marshals Service (USMS) will electronically record statements made by individuals in their custody.

> This policy also encourages agents and prosecutors to consider electronic recording in investigative or other circumstances where the presumption does not apply. The policy encourages agents and prosecutors to consult with each other in such circumstances.[8]

Despite this, the DOJ and FBI declined to exercise their discretion to record the interview of former Secretary Clinton. This is truly inexplicable, given that the case was of keen national interest and importance, and involved a former Secretary of State and candidate for President of the United States who was accused of violating the Espionage Act. It only reinforces the sense that our nation's top law enforcement officials conspired to sweep the Clinton "matter" under the rug, and that there is, truly, one system for the powerful and politically well-connected, and another for everyone else.

In this case, it appears that Director Comey and other senior Justice Department and government officials may have pre-judged the "matter" before all the facts were known, thereby ensuring former Secretary Clinton would not be charged for her criminal activity. We implore you to name a second special counsel, to investigate this and other matters related to the 2016 election, including the conduct of the Justice Department regarding the investigation into Secretary Clinton's private email server.

Sincerely,

---

[8] "Attorney General Holder Announces Significant Policy Shift Concerning Electronic Recording of Statements," *available at* https://www.justice.gov/opa/pr/attorney-general-holder-announces-significant-policy-shift-concerning-electronic-recording (emphasis added).

Steve King                     Lamar Smith

Raúl R. Labrador

Matt Gaetz                     Tom Cole

Andy Biggs                     Jim Jordan

Martha Roby                    Mike Bost

John Ratcliffe                 Blake Farenthold

John Rutherford



November 22, 2017

<u>VIA ONLINE PORTAL & ELECTRONIC MAIL</u>

Laurie Day                                          Karen McFadden
Chief, Initial Request Staff                        FOIA Contact
Office of Information Policy                         Justice Management Division
U.S. Department of Justice                          U.S. Department of Justice
1425 New York Avenue NW, Suite 11050                950 Pennsylvania Avenue NW
Washington, DC 20530-0001                           Room 1111 RFK
Via FOIAOnline                                      Washington, DC 20530-0001
                                                    JMDFOIA@usdoj.gov

Re: Freedom of Information Act Request

Dear Ms. Day and Ms. McFadden:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of the Department of Justice (DOJ), 28 C.F.R. Part 16, American Oversight makes the following request for records.

Since taking office in January, President Trump has regularly attacked Hillary Clinton and called on DOJ to investigate various allegations against Ms. Clinton.[1] One such allegation has included inappropriate influence in the 2010 acquisition of Uranium One by Rosatom, the Russian nuclear energy agency.[2] Responding both to the president and letters from House Judiciary Committee Chairman Bob Goodlatte, DOJ is now considering the appointment of a second special counsel to investigate Ms. Clinton.[3] In the meantime, Attorney General Jeff Sessions is under regular scrutiny

---

[1] *See* Matthew Nussbaum & Tara Palmeri, *Trump Can't Stop Obsessing About the Clintons*, POLITICO (Mar. 28, 2017, 5:01 PM), https://www.politico.com/story/2017/03/trump-hillary-bill-clinton-236602; Abigail Abrams, *President Trump Attacked Hillary Clinton over Her Emails. Again.*, TIME, June 15, 2017, http://time.com/4820708/donald-trump-russia-investigation-hillary-clinton-obstruction/; Associated Press, *Trump Tweets Fresh Attacks on Democrats and Hillary Clinton Amid Reports of Looming Charges in Russia Probe*, L.A. TIMES, Oct. 29, 2017, http://www.latimes.com/politics/la-pol-updates-trump-tweets-russia-republican-anger-htmlstory.html.
[2] Lauren Carroll, *Fact-Checking Donald Trump's Tweets About Hillary Clinton and Russia*, POLITIFACT (Mar. 28, 2017, 4:00 PM), http://www.politifact.com/truth-o-meter/article/2017/mar/28/fact-checking-donald-trumps-tweets-about-hillary-c/.
[3] Mat Zapotosky, *Sessions Considering Second Special Counsel to Investigate Republican Concerns, Letter Shows*, WASH. POST, Nov. 13, 2017, https://www.washingtonpost.com/world/national-security/sessions-considering-second-special-counsel-to-investigate-republican-concerns-letter-shows/2017/11/13/bc92ef3c-c8d2-11e7-b0cf-7689a9f2d84e_story.html?utm_term=.fa50162b4a3d.



from the president and even the Senate Majority leader is suggesting that Mr. Sessions replace the embattled Republican nominee in the race to fill his former seat in the Senate.[4] American Oversight submits this request to shed light on whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities.

Requested Records

American Oversight requests that the Office of the Attorney General and the Justice Management Division produce the following within twenty business days:

> All records reflecting any analysis of government or legal-ethics issues or evaluating any recusal obligations (including a conclusion that recusal was not necessary) related to the Attorney General's participation in connection with any decision relating to any investigation or prosecution (or potential investigation or prosecution) of any issues raised in either of Congressman Robert Goodlatte's letters of July 27, 2017, and September 26, 2017, attached for your convenience.

> Please provide all responsive records from July 27, 2017, through the date the search is conducted.

In addition to the records requested above, American Oversight also requests records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If DOJ uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.** Records of official business conducted using unofficial systems or stored outside of official files is subject to the

---

[4] Brian Naylor et al., *McConnell Talks Up Sessions As Write-In Candidate to Replace Roy Moore*, NPR (Nov. 14, 2017, 12:08 PM), https://www.npr.org/2017/11/14/564071391/ryan-sessions-add-to-gop-voices-saying-moore-accusers-are-credible.

DOJ-17-0536

Federal Records Act and FOIA.[5] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfullness, failed to meet their obligations.[6]**

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DOJ's prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.[7] Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but DOJ's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that DOJ use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.**

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[8] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415

---

[5] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

[6] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work-related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[7] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

[8] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).

DOJ-17-0536

U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[9] Moreover, the *Vaughn* index "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."[10] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[11]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[12] Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, DOJ is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and DOJ can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

### Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k), American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a

---

[9] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).
[10] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphasis in original).
[11] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).
[12] *Mead Data Central*, 566 F.2d at 261.

DOJ-17-0536

significant way.[13] Moreover, the request is primarily and fundamentally for non-commercial purposes.[14]

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[15] The requested records are directly related to the work of the highest levels of leadership at DOJ. There is significant interest in the subject of these records, both from the American people at large as well as the U.S. Congress.[16] The requested records will help American Oversight and the general public understand whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available. As noted, the subject of this request is a matter of public interest, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[17] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[18] American

---

[13] 28 C.F.R. § 16.10(k)(2).

[14] *Id.*

[15] 28 C.F.R. § 16.10(k)(2)(i), (ii)(A)–(B).

[16] *See* Abrams, *supra* note 1; Associated Press, *supra* note 1; Carroll, *supra* note 2; *Uranium One Probe: Order to Lift 'Gag' on Russia Informant Came from Trump, Source Says*, FOX NEWS, Oct. 26, 2017, http://www.foxnews.com/politics/2017/10/26/uranium-one-probe-order-to-lift-gag-on-russia-informant-came-from-trump-source-says.html; Naylor et al., *supra* note 4; Nussbaum & Palmeri, *supra* note 1; Michael S. Schmidt & Maggie Haberman, *Justice Dept. to Weigh Inquiry Into Clinton Foundation*, N.Y. TIMES, Nov. 13, 2017, https://www.nytimes.com/2017/11/13/us/politics/justice-department-uranium-one-special-counsel.html; Eileen Sullivan, *What Is the Uranium One Deal and Why Does the Trump Administration Care So Much?*, N.Y. TIMES, Nov. 14, 2017, https://www.nytimes.com/2017/11/14/us/politics/uranium-one-hillary-clinton.html; The Washington Post, *Sessions Replacing Moore Could Solve Trump's Mueller Problem*, AL.COM (Nov. 14, 2017, 11:10 AM), http://www.al.com/opinion/index.ssf/2017/11/sessions_replacing_moore_could.html; Katie Bo Williams, *Judiciary Chairman Hints at Dissatisfaction with Sessions*, THE HILL (Nov. 14, 2017, 10:31 AM), http://thehill.com/homenews/administration/360265-judiciary-chairman-hints-at-dissatisfaction-with-sessions; Zapotosky, *supra* note 3.

[17] 28 C.F.R. § 16.10(k)(iii)(A)–(B).

[18] American Oversight currently has approximately 11,700 page likes on Facebook, and 37,400 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/

Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, after receiving records regarding an ethics waiver received by a senior DOJ attorney,[19] American Oversight promptly posted the records to its website and published an analysis of what the records reflected about DOJ's process for ethics waivers.[20] As another example, American Oversight has a project called "Audit the Wall," where the organization is gathering and analyzing information and commenting on public releases of information related to the administration's proposed construction of a barrier along the U.S.-Mexico border.[21]

Accordingly, American Oversight qualifies for a fee waiver.

<u>Conclusion</u>

We share a common mission to promote transparency in government. American Oversight looks forward to working with DOJ on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact Cerissa Cafasso at foia@americanoversight.org or 202.869.5246. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

---

(last visited Nov. 20, 2017); American Oversight (@weareoversight), TWITTER, https://twitter.com/weareoversight (last visited Nov. 20, 2017).

[19] *DOJ Civil Division Response Noel Francisco Compliance,* AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance.

[20] *Francisco & the Travel Ban: What We Learned from the DOJ Documents,* AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[21] *Audit the Wall,* AMERICAN OVERSIGHT, www.auditthewall.org.

DOJ-17-0536

BOB GOODLATTE, Virginia
CHAIRMAN

F. JAMES SENSENBRENNER, JR., Wisconsin
LAMAR S. SMITH, Texas
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
RAÚL R. LABRADOR, Idaho
BLAKE FARENTHOLD, Texas
DOUG COLLINS, Georgia
RON DeSANTIS, Florida
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona
JOHN RUTHERFORD, Florida
KAREN HANDEL, Georgia

ONE HUNDRED FIFTEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515-6216

(202) 225-3951
http://www.house.gov/judiciary

JOHN CONYERS, JR., Michigan
RANKING MEMBER

JERROLD NADLER, New York
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
TED DEUTCH, Florida
LUIS V. GUTIÉRREZ, Illinois
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
BRAD SCHNEIDER, Illinois

July 27, 2017

The Honorable Jeff Sessions
Attorney General
U.S. Department of Justice
Washington, D.C.

The Honorable Rod J. Rosenstein
Deputy Attorney General
U.S. Department of Justice
Washington, D.C.

Dear Attorney General Sessions and Deputy Attorney General Rosenstein:

We are writing to you to request assistance in restoring public confidence in our nation's justice system and its investigators, specifically the Department of Justice (DOJ) and the Federal Bureau of Investigation (FBI). We need to enable these agencies to perform their necessary and important law enforcement and intelligence functions fully unhindered by politics. While we presume that the FBI's investigation into Russian influence has been subsumed into Special Counsel Robert Mueller's investigation, we are not confident that other matters related to the 2016 election and aftermath are similarly under investigation by Special Counsel Mueller. The unbalanced, uncertain, and seemingly unlimited focus of the special counsel's investigation has led many of our constituents to see a dual standard of justice that benefits only the powerful and politically well-connected. For this reason, we call on you to appoint a second special counsel[1] to investigate a plethora of matters connected to the 2016 election and its aftermath, including actions taken by previously public figures like Attorney General Loretta Lynch, FBI Director James Comey, and former Secretary of State Hillary Clinton.

Many Democrats and members of the Washington media previously called for a "special prosecutor" to investigate Russian influence on the election and connections with the Trump campaign. Not surprisingly, once you actually made the decision to appoint a special counsel, the calls for further investigations by congressional committees continued, focused on allegations that have heretofore produced no evidence of criminality, despite the fact that over a year has passed since the opening of the original FBI investigation. Political gamesmanship continues to

---

[1] *See* 28 CFR Part 600 – General Powers of Special Counsel.

saturate anything and everything associated with reactions to President Trump's executive decisions, and reveals the hypocrisy of those who refuse to allow the Special Counsel's investigation to proceed without undue political influence. It is an unfortunate state of affairs.

Your stated rationale for recommending Director Comey's termination as FBI Director was his mishandling of former Secretary Clinton's email investigation and associated public disclosures concerning the investigation's findings. We believe this was the correct decision. It is clear that Director Comey contributed to the politicization of the FBI's investigations by issuing his public statement, nominating himself as judge and jury, rather than permitting career DOJ prosecutors to make the final decision. But many other questions remain unanswered, due to Mr. Comey's premature and inappropriate decision, as well as the Obama Justice Department's refusal to respond to legitimate Congressional oversight. Last week, the Republican Members of this Committee sent a letter to the Justice Department, asking for responses to those unanswered inquiries.[2] These questions cannot, for history's sake and for the preservation of an impartial system of justice, be allowed to die on the vine.

It is therefore incumbent on this Committee, in our oversight capacity, to ensure that the agencies we oversee are above reproach and that the Justice Department, in particular, remains immune to accusations of politicization. Many Congressional entities have been engaged in oversight of Russian influence on the election, but a comprehensive investigation into the 2016 Presidential campaign and its aftermath must, similarly, be free of even the suggestion of political interference. The very core of our justice system demands as much. A second, newly-appointed special counsel will not be encumbered by these considerations, and will provide real value to the American people in offering an independent perspective on these extremely sensitive matters.

Our call for a special counsel is not made lightly. We have no interest in engendering more bad feelings and less confidence in the process or governmental institutions by the American people. Rather, our call is made on their behalf. It is meant to determine whether the criminal prosecution of any individual is warranted based on the solemn obligation to follow the facts wherever they lead and applying the law to those facts.

As we referenced above, Democrats and the mainstream media called for a special counsel to be appointed to investigate any Russian influence on President Trump's campaign. Their pleas were answered, but there are many questions that may be outside the scope of Special Counsel Mueller's investigation. This was clear following Mr. Comey's recent testimony to the Senate Intelligence Committee on June 8, 2017, which ignited renewed scrutiny of former

---

[2] *See* House Judiciary Committee letter of July 21, 2017 to Attorney General Sessions, requesting answers to multiple questions which remain unanswered or inadequately answered from the Obama Administration, *available at* https://judiciary.house.gov/wp-content/uploads/2017/07/072117_Letter-to-AG-Sessions.pdf?utm_source=House+Judiciary+Committee+Press+Releases&utm_campaign=fcab593157-EMAIL_CAMPAIGN_2017_07_21&utm_medium=email&utm_term=0_df41eba8fd-fcab593157-101865997.

Attorney General Loretta Lynch, and the actions she took to mislead the public concerning the investigation into the Clinton email investigation. Last year, this Committee inquired repeatedly about the circumstances surrounding that and other matters, but our inquiries were largely ignored.[3]

During his testimony, Mr. Comey referenced a meeting on the Phoenix airport tarmac between Ms. Lynch and former President Bill Clinton. Mr. Comey raised concerns about Ms. Lynch's conduct, and questioned her independence, stating:

> At one point, the attorney general had directed me not to call it an investigation, but instead to call it a matter, which confused me and concerned me. That was one of the bricks in the load that led me to conclude, 'I have to step away from the department if we're to close this case credibly.'[4]

In addition, in preparing to testify in front of Congress for a September 2015 hearing, Mr. Comey asked Ms. Lynch at the time whether she was prepared to refer to the Clinton investigation as just that, an "investigation." Mr. Comey testified that Ms. Lynch said, "Yes, but don't call it that, call it a matter." Mr. Comey retorted, "Why would I do that?" Ms. Lynch answered, "Just call it a matter."[5] Mr. Comey stated that he acquiesced, but it gave him "a queasy feeling," since it gave him the "impression that the attorney general was trying to align how we describe our work" with how the Clinton campaign was talking about it.[6]

Notwithstanding the fact that the FBI is the Federal Bureau of Investigation, and not the Federal Bureau of Matters, one is hard-pressed to understand why Ms. Lynch directed then-Director Comey to call the Clinton investigation a "matter" unless she intended to use such deceptive language to help wrongly persuade the American people that former Secretary Clinton was not, in fact, the subject of a full-scale FBI investigation, or to otherwise undermine the integrity of the investigation.

Following Director Comey's Senate Intelligence Committee testimony, Senator Dianne Feinstein was asked about the testimony while appearing on CNN's "State of the Union." Senator Feinstein stated, "I would have a queasy feeling too, though, to be candid with you, I think we need to know more about that, and there's only one way to know about it, and that's to have the Judiciary Committee take a look at that."[7]

---

[3] Id.

[4] Peter Baker, *The New York Times*, June 8, 2017, *available at* https://www.nytimes.com/2017/06/08/us/politics/comey-testimony-loretta-lynch.html.

[5] Id.

[6] Ed O'Keefe, *The Washington Post*, June 8, 2017, *available at* https://www.washingtonpost.com/politics/2017/live-updates/trump-white-house/james-comey-testimony-what-we-learn/comey-repeats-that-lynch-asked-him-to-describe-clinton-investigations-as-a-matter/?utm_term=.ccb1c193f596.

[7] Eli Watkins, "Feinstein: Judiciary Committee must 'step up and carry its weight'," *CNN.com*, June 11, 2017, *available at* http://www.cnn.com/2017/06/11/politics/dianne-feinstein-james-comey/index.html.

We share Senator Feinstein's and Mr. Comey's concerns – specifically, that during the midst of a contentious Presidential election, which was already rife with scandal arising from Secretary Clinton's mishandling of classified information, that our nation's chief law enforcement officer would instruct the FBI Director, her subordinate, to mislead the American public about the nature of the investigation. Following Ms. Lynch's directive to downplay the Clinton investigation as a "matter," Director Comey infamously terminated the Clinton investigation, stating, "[a]lthough there is evidence of potential violations of the statutes regarding the handling of classified information, our judgment is that no reasonable prosecutor would bring such a case."[8]

Mr. Comey's testimony has provided new evidence that Ms. Lynch may have used her position of authority to undermine the Clinton investigation. At any other point in history this accusation would entail a shock to the conscience of law abiding Americans who expect a DOJ free of political influence. We only have, however, an investigation into Russian influence on the 2016 election, including any ties to the Trump campaign. To limit our nation's insight into just this this single component of the 2016 election will only cause the special counsel's work to be derided as one-sided and incomplete. The special counsel's work must begin and end unimpeded by political motivations on either side of the aisle. For these reasons, the following points must also be fully investigated – ideally, via a second special counsel. This is imperative to regain the cherished trust and confidence in our undoubtedly distressed law enforcement and political institutions.

We call on a newly appointed special counsel to investigate, consistent with appropriate regulations, the following questions, many of which were previously posed by this Committee and remain unanswered:

1) Then-Attorney General Loretta Lynch directing Mr. Comey to mislead the American people on the nature of the Clinton investigation;
2) The shadow cast over our system of justice concerning Secretary Clinton and her involvement in mishandling classified information;
3) FBI and DOJ's investigative decisions related to former Secretary Clinton's email investigation, including the propriety and consequence of immunity deals given to potential Clinton co-conspirators Cheryl Mills, Heather Samuelson, John Bentel and possibly others;
4) The apparent failure of DOJ to empanel a grand jury to investigate allegations of mishandling of classified information by Hillary Clinton and her associates;
5) The Department of State and its employees' involvement in determining which communications of Secretary Clinton's and her associates to turn over for public scrutiny;

---

[8] Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System, July 5, 2016, *available at* https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system.

6) WikiLeaks disclosures concerning the Clinton Foundation and its potentially unlawful international dealings;

7) Connections between the Clinton campaign, or the Clinton Foundation, and foreign entities, including those from Russia and Ukraine;

8) Mr. Comey's knowledge of the purchase of Uranium One by the company Rosatom, whether the approval of the sale was connected to any donations made to the Clinton Foundation, and what role Secretary Clinton played in the approval of that sale that had national security ramifications;

9) Disclosures arising from unlawful access to the Democratic National Committee's (DNC) computer systems, including inappropriate collusion between the DNC and the Clinton campaign to undermine Senator Bernie Sanders' presidential campaign;

10) Post-election accusations by the President that he was wiretapped by the previous Administration, and whether Mr. Comey and Ms. Lynch had any knowledge of efforts made by any federal agency to unlawfully monitor communications of then-candidate Trump or his associates;

11) Selected leaks of classified information related to the unmasking of U.S. person identities incidentally collected upon by the intelligence community, including an assessment of whether anyone in the Obama Administration, including Mr. Comey, Ms. Lynch, Ms. Susan Rice, Ms. Samantha Power, or others, had any knowledge about the "unmasking" of individuals on then candidate-Trump's campaign team, transition team, or both;

12) Admitted leaks by Mr. Comey to Columbia University law professor, Daniel Richman, regarding conversations between Mr. Comey and President Trump, how the leaked information was purposefully released to lead to the appointment of a special counsel, and whether any classified information was included in the now infamous "Comey memos";

13) Mr. Comey's and the FBI's apparent reliance on "Fusion GPS" in its investigation of the Trump campaign, including the company's creation of a "dossier" of information about Mr. Trump, that dossier's commission and dissemination in the months before and after the 2016 election, whether the FBI paid anyone connected to the dossier, and the intelligence sources of Fusion GPS or any person or company working for Fusion GPS and its affiliates; and

14) Any and all potential leaks originated by Mr. Comey and provide to author Michael Schmidt dating back to 1993.

You have the ability now to right the ship for the American people so these investigations may proceed independently and impartially. The American public has a right to know the facts – all of them – surrounding the election and its aftermath. We urge you to appoint a second special counsel to ensure these troubling, unanswered questions are not relegated to the dustbin of history.

Sincerely,

Mike Johnson

Martha Roby

Trent Franks

John Rutherford

John Ratcliffe

Karen C. Handel

BOB GOODLATTE, Virginia
CHAIRMAN

F. JAMES SENSENBRENNER, JR., Wisconsin
LAMAR S. SMITH, Texas
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
RAÚL R. LABRADOR, Idaho
BLAKE FARENTHOLD, Texas
DOUG COLLINS, Georgia
RON DeSANTIS, Florida
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MIKE BISHOP, Michigan
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona

ONE HUNDRED FIFTEENTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–6216
(202) 225–3951
http://www.house.gov/judiciary

JOHN CONYERS, JR., Michigan
RANKING MEMBER

JERROLD NADLER, New York
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
JUDY CHU, California
TED DEUTCH, Florida
LUIS V. GUTIÉRREZ, Illinois
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington

September 26, 2017

Dear Attorney General Sessions and Deputy Attorney General Rosenstein:

We write to renew this Committee's recent call for a second special counsel, to investigate matters which may be outside the scope of Special Counsel Robert Mueller's investigation.[1] Such a step is even more critical given the recent revelation that former FBI Director James Comey had prepared a statement ending the investigation into former Secretary of State Hillary Clinton, before interviewing at least 17 key witnesses, including the former Secretary herself.[2] At least one former career FBI supervisor has characterized this action as "so far out of bounds it's not even in the stadium," and "clearly communicating to [FBI executive staff] where the investigation was going to go."[3]

Among those witnesses the FBI failed to interview prior to the Director's preparation of his statement were Cheryl Mills and Heather Samuelson, both of whom were close Clinton aides with extensive knowledge of the facts surrounding the establishment of a private email server. Last year, this Committee inquired repeatedly of the Justice Department about the facts surrounding Ms. Mills' and Ms. Samuelson's involvement.[4] Our inquiries were largely ignored. Recently, we wrote to you to request responses to those and other unanswered questions

---

[1] "Goodlatte & Judiciary Republicans Call for Second Special Counsel to Address Issues Outside the Scope of Special Counsel Mueller's Investigation," July 27, 2017, *available at* https://judiciary.house.gov/press-release/goodlatte-judiciary-republicans-call-second-special-counsel-address-issues-outside-scope-special-counsel-muellers-investigation/.

[2] Letter from Senators Grassley and Graham to FBI Director Christopher Wray, August 30, 2017, *available at* https://www.judiciary.senate.gov/imo/media/doc/2017-08-30%20CEG%20+%20LG%20to%20FBI%20(Comey%20Statement).pdf.

[3] "Did James Comey Break Rules by Drafting Hillary Clinton Statement? FBI Experts Are Divided," Newsweek, September 1, 2017, *available at* http://www.newsweek.com/comey-clinton-investigation-draft-statement-trump-658620.

[4] See, e.g., "Goodlatte Presses Justice Department on Secret Agreements with Top Clinton Advisors," October 3, 2016, *available at* https://judiciary.house.gov/press-release/goodlatte-presses-justice-department-secret-agreements-top-clinton-advisors/.

pertaining to the Clinton investigation.[5] We have not received a response. However, as the most recent Comey revelations make clear, ignoring this problem will not make it go away.

As we pointed out at the time, both Ms. Mills and Ms. Samuelson received immunity for their cooperation in the Clinton investigation, but were nevertheless permitted to sit in on the interview of Secretary Clinton. That, coupled with the revelation that the Director had already drafted an exoneration statement, strongly suggests that the interview was a mere formality, and that the Director had already decided the case would be closed.

During our FBI Oversight hearing last year, Congressman John Ratcliffe questioned the Director about this very issue. In part, that exchange was as follows:

> Mr. RATCLIFFE. Director, did you make the decision not to recommend criminal charges relating to classified information before or after Hillary Clinton was interviewed by the FBI on July the 2nd?
>
> Mr. COMEY. After.
>
> Mr. RATCLIFFE. Okay. Then I am going to need your help in trying to understand how that is possible. I think there are a lot of prosecutors or former prosecutors that are shaking our heads at how that could be the case. Because if there was ever any real possibility that Hillary Clinton might be charged for something that she admitted to on July the 2nd, why would two of the central witnesses in a potential prosecution against her be allowed to sit in the same room to hear the testimony?[6]

Why, indeed. Perhaps it was because, just as the Comey revelation suggests, the decision had already been made – prior to the interview of Secretary Clinton, Ms. Mills, Ms. Samuelson, or any of the other 14 potential witnesses – that Secretary Clinton would not be charged with any crimes for her conduct. President Obama had indicated as much, by stating publicly at the time that although Secretary Clinton showed "carelessness" in conducting government business on a private server, she had no intent to endanger national security. Of course, Secretary Clinton's supposed lack of "intent to harm national security" is a red herring, since the law merely requires the government to show "gross negligence."[7]

---

[5] "Goodlatte & Judiciary Republicans Request Responses to Unanswered Oversight Letters Sent During Obama Administration," July 21, 2017, *available at* https://judiciary.house.gov/press-release/goodlatte-judiciary-republicans-request-responses-unanswered-oversight-letters-sent-obama-administration/.

[6] "Oversight of the Federal Bureau of Investigation," Hearing before the H. Comm. on Judiciary, September 28, 2016, p. 87, *available at* https://judiciary.house.gov/wp-content/uploads/2016/09/114-91_22125.pdf.

[7] 18 U.S.C. § 793(f). For a thorough account of this, see Andrew C. McCarthy, "It Wasn't Comey's Decision to Exonerate Hillary – It Was Obama's," *available at* http://www.nationalreview.com/corner/451053/not-comeys-decision-exonerate-hillary-obamas-decision.

Moreover, we note that not only did the former Director end the investigation prematurely -- and potentially at the direction, tacit or otherwise, of President Obama -- but he did so while declining to record the interviews of former Secretary Clinton or any of her close associates, as provided for by DOJ policy. The policy states:

> This policy establishes a presumption that the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and the United States Marshals Service (USMS) will electronically record statements made by individuals in their custody.

> This policy also encourages agents and prosecutors to consider electronic recording in investigative or other circumstances where the presumption does not apply. The policy encourages agents and prosecutors to consult with each other in such circumstances.[8]

Despite this, the DOJ and FBI declined to exercise their discretion to record the interview of former Secretary Clinton. This is truly inexplicable, given that the case was of keen national interest and importance, and involved a former Secretary of State and candidate for President of the United States who was accused of violating the Espionage Act. It only reinforces the sense that our nation's top law enforcement officials conspired to sweep the Clinton "matter" under the rug, and that there is, truly, one system for the powerful and politically well-connected, and another for everyone else.

In this case, it appears that Director Comey and other senior Justice Department and government officials may have pre-judged the "matter" before all the facts were known, thereby ensuring former Secretary Clinton would not be charged for her criminal activity. We implore you to name a second special counsel, to investigate this and other matters related to the 2016 election, including the conduct of the Justice Department regarding the investigation into Secretary Clinton's private email server.

Sincerely,

---

[8] "Attorney General Holder Announces Significant Policy Shift Concerning Electronic Recording of Statements," *available at* https://www.justice.gov/opa/pr/attorney-general-holder-announces-significant-policy-shift-concerning-electronic-recording (emphasis added).

Steve King

Lamar Smith

Raúl R. Labrador

Matt Gaetz

Tom Cole

Andy Biggs

Jim Jordan

Martha Roby

Mike Bost

John Ratcliffe

Blake Farenthold

John Rutherford



November 22, 2017

<u>VIA ONLINE PORTAL</u>

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
U.S. Department of Justice
1425 New York Avenue NW, Suite 11050
Washington, DC 20530-0001
Via FOIAOnline

Re: Freedom of Information Act Request

Dear Ms. Day:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing
regulations of the Department of Justice (DOJ), 28 C.F.R. Part 16, American Oversight makes the
following request for records.

Since taking office in January, President Trump has regularly attacked Hillary Clinton and called
on DOJ to investigate various allegations against Ms. Clinton.[1] One such allegation has included
inappropriate influence in the 2010 acquisition of Uranium One by Rosatom, the Russian nuclear
energy agency.[2] Responding both to the president and letters from House Judiciary Committee
Chairman Bob Goodlatte, DOJ is now considering the appointment of a second special counsel to
investigate Ms. Clinton.[3] In the meantime, Attorney General Jeff Sessions is under regular scrutiny
from the president and even the Senate Majority leader is suggesting that Mr. Sessions replace the

---

[1] *See* Matthew Nussbaum & Tara Palmeri, *Trump Can't Stop Obsessing About the Clintons*,
POLITICO (Mar. 28, 2017, 5:01 PM), https://www.politico.com/story/2017/03/trump-hillary-bill-
clinton-236602; Abigail Abrams, *President Trump Attacked Hillary Clinton over Her Emails.
Again.*, TIME, June 15, 2017, http://time.com/4820708/donald-trump-russia-investigation-hillary-
clinton-obstruction/; Associated Press, *Trump Tweets Fresh Attacks on Democrats and Hillary
Clinton Amid Reports of Looming Charges in Russia Probe*, L.A. TIMES, Oct. 29, 2017,
http://www.latimes.com/politics/la-pol-updates-trump-tweets-russia-republican-anger-
htmlstory.html.
[2] Lauren Carroll, *Fact-Checking Donald Trump's Tweets About Hillary Clinton and Russia*,
POLITIFACT (Mar. 28, 2017, 4:00 PM), http://www.politifact.com/truth-o-
meter/article/2017/mar/28/fact-checking-donald-trumps-tweets-about-hillary-c/.
[3] Mat Zapotosky, *Sessions Considering Second Special Counsel to Investigate Republican
Concerns, Letter Shows*, WASH. POST, Nov. 13, 2017,
https://www.washingtonpost.com/world/national-security/sessions-considering-second-special-
counsel-to-investigate-republican-concerns-letter-shows/2017/11/13/bc92ef3c-c8d2-11e7-b0cf-
7689a9f2d84e_story.html?utm_term=.fa50162b4a3d.



embattled Republican nominee in the race to fill his former seat in the Senate.[4] American Oversight submits this request to shed light on whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities.

<u>Requested Records</u>

American Oversight requests that the Office of the Attorney General and the Office of the Deputy Attorney General produce the following within twenty business days:

> All guidance or directives provided to the "senior federal prosecutors" who have been "directed" "to evaluate certain issues raised in [Congressman Robert Goodlatte's] letters," as indicated in the Department of Justice's November 13, 2017 response signed by Assistant Attorney General Stephen Boyd, attached for your convenience, regarding their performance of that task.

> Please provide all responsive records from July 27, 2017, through the date the search is conducted.

In addition to the records requested above, American Oversight also requests records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If DOJ uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.** Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[5] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American**

---

[4] Brian Naylor et al., *McConnell Talks Up Sessions As Write-In Candidate to Replace Roy Moore*, NPR (Nov. 14, 2017, 12:08 PM), https://www.npr.org/2017/11/14/564071391/ryan-sessions-add-to-gop-voices-saying-moore-accusers-are-credible.

[5] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

DOJ-17-0540

**Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.**[6]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DOJ's prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.**[7] **Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but DOJ's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that DOJ use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.**

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[8] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[9] Moreover, the *Vaughn* index "must describe *each* document or

---

[6] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work-related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[7] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

[8] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).

[9] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

DOJ-17-0540

portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."[10] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[11]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[12] Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, DOJ is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and DOJ can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k), American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way.[13] Moreover, the request is primarily and fundamentally for non-commercial purposes.[14]

---

[10] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphasis in original).

[11] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

[12] *Mead Data Central*, 566 F.2d at 261.

[13] 28 C.F.R. § 16.10(k)(2).

[14] *Id.*

DOJ-17-0540

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[15] The requested records are directly related to the work of the highest levels of leadership at DOJ. There is significant interest in the subject of these records, both from the American people at large as well as the U.S. Congress.[16] The requested records will help American Oversight and the general public understand whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available. As noted, the subject of this request is a matter of public interest, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[17] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[18] American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, after receiving records regarding an ethics waiver received by a

---

[15] 28 C.F.R. § 16.10(k)(2)(i), (ii)(A)–(B).

[16] *See* Abrams, *supra* note 1; Associated Press, *supra* note 1; Carroll, *supra* note 2; *Uranium One Probe: Order to Lift 'Gag' on Russia Informant Came from Trump, Source Says*, FOX NEWS, Oct. 26, 2017, http://www.foxnews.com/politics/2017/10/26/uranium-one-probe-order-to-lift-gag-on-russia-informant-came-from-trump-source-says.html; Naylor et al., *supra* note 4; Nussbaum & Palmeri, *supra* note 1; Michael S. Schmidt & Maggie Haberman, *Justice Dept. to Weigh Inquiry Into Clinton Foundation*, N.Y. TIMES, Nov. 13, 2017, https://www.nytimes.com/2017/11/13/us/politics/justice-department-uranium-one-special-counsel.html; Eileen Sullivan, *What Is the Uranium One Deal and Why Does the Trump Administration Care So Much?*, N.Y. TIMES, Nov. 14, 2017, https://www.nytimes.com/2017/11/14/us/politics/uranium-one-hillary-clinton.html; The Washington Post, *Sessions Replacing Moore Could Solve Trump's Mueller Problem*, AL.COM (Nov. 14, 2017, 11:10 AM), http://www.al.com/opinion/index.ssf/2017/11/sessions_replacing_moore_could.html; Katie Bo Williams, *Judiciary Chairman Hints at Dissatisfaction with Sessions*, THE HILL (Nov. 14, 2017, 10:31 AM), http://thehill.com/homenews/administration/360265-judiciary-chairman-hints-at-dissatisfaction-with-sessions; Zapotosky, *supra* note 3.

[17] 28 C.F.R. § 16.10(k)(iii)(A)–(B).

[18] American Oversight currently has approximately 11,700 page likes on Facebook, and 37,400 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/ (last visited Nov. 20, 2017); American Oversight (@weareoversight), TWITTER, https://twitter.com/weareoversight (last visited Nov. 20, 2017).

DOJ-17-0540

senior DOJ attorney,[19] American Oversight promptly posted the records to its website and published an analysis of what the records reflected about DOJ's process for ethics waivers.[20] As another example, American Oversight has a project called "Audit the Wall," where the organization is gathering and analyzing information and commenting on public releases of information related to the administration's proposed construction of a barrier along the U.S.-Mexico border.[21]

Accordingly, American Oversight qualifies for a fee waiver.

<u>Conclusion</u>

We share a common mission to promote transparency in government. American Oversight looks forward to working with DOJ on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact Cerissa Cafasso at foia@americanoversight.org or 202.869.5246. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

---

[19] *DOJ Civil Division Response Noel Francisco Compliance,* AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance.
[20] *Francisco & the Travel Ban: What We Learned from the DOJ Documents,* AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.
[21] *Audit the Wall,* AMERICAN OVERSIGHT, www.auditthewall.org.

DOJ-17-0540



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General                              *Washington, D.C. 20530*

The Honorable Robert W. Goodlatte
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

**NOV 1 3 2017**

Dear Chairman Goodlatte:

This responds to your letters dated July 27, 2017, and September 26, 2017, in which you and other Members request the appointment of a Special Counsel to investigate various matters, including the sale of Uranium One, alleged unlawful dealings related to the Clinton Foundation and other matters. We are sending identical responses to the other Members who joined your letter.

As noted during our prior meeting in response to your letters, the Department of Justice (Department) takes seriously its responsibility to provide timely and accurate information to Congress on issues of public interest, and seeks to do so in a non-political manner that is consistent with the Department's litigation, law enforcement, and national security responsibilities. Additionally, the Department's leadership has a duty to carefully evaluate the status of ongoing matters to ensure that justice is served and that the Department's communications with Congress are accurate and complete.

To further that goal, the Attorney General has directed senior federal prosecutors to evaluate certain issues raised in your letters. These senior prosecutors will report directly to the Attorney General and the Deputy Attorney General, as appropriate, and will make recommendations as to whether any matters not currently under investigation should be opened, whether any matters currently under investigation require further resources, or whether any matters merit the appointment of a Special Counsel. This will better enable the Attorney General and the Deputy Attorney General to more effectively evaluate and manage the caseload. In conducting this review, all allegations will be reviewed in light of the Principles of Federal Prosecution. (USAM 9-27.000)

As you know, consistent with longstanding policy, the Department does not ordinarily confirm or deny investigations, and this letter should not be construed to do so. While this policy can be frustrating, especially on matters of great public concern, it is necessary to ensure that the Department acts with fairness and thoughtfulness, and always in a manner consistent with the law and rules of the Department.

The Honorable Robert W. Goodlatte
Page Two

In addition, you must know the Department will never evaluate any matter except on the facts and the law. Professionalism, integrity, and public confidence in the Department's work is critical for us, and no priority is higher.

Your letter referenced various allegations related to the Federal Bureau of Investigation's (FBI) handling of the investigation into former Secretary of State Hillary Clinton's use of a personal email server. On January 12, 2017, the Department's Inspector General (IG) sent a letter to you and other Members advising that the IG's office was initiating a review of, among other things:

- Allegations that Department or FBI policies or procedures were not followed in connection with, or in actions leading up to or related to, the FBI Director's public announcement on July 5, 2016, and the Director's letters to Congress on October 28 and November 6, 2016, and that certain underlying investigative decisions were based on improper considerations;

- Allegations that the FBI Deputy Director should have been recused from participating in certain investigative matters;

- Allegations that Department and FBI employees improperly disclosed non-public information; and

- Allegations that decisions regarding the timing of the FBI's release of certain Freedom of Information Act documents on October 30 and November 1, 2016, and the use of a Twitter account to publicize the same, were influenced by improper considerations.

These investigations include issues raised in your letters. In addition, the Department has forwarded a copy of your letters to the IG so he can determine whether he should expand the scope of his investigation based on the information contained in those letters.

Once the IG's review is complete, the Department will assess what, if any, additional steps are necessary to address any issues identified by that review.

We will conduct this evaluation according to the highest standards of justice. We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Very truly yours,

Stephen E. Boyd
Assistant Attorney General



November 22, 2017

<u>VIA ONLINE PORTAL</u>

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
U.S. Department of Justice
1425 New York Avenue NW, Suite 11050
Washington, DC 20530-0001
Via FOIAOnline

Re: Freedom of Information Act Request

Dear Ms. Day:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing
regulations of the Department of Justice (DOJ), 28 C.F.R. Part 16, American Oversight makes the
following request for records.

Since taking office in January, President Trump has regularly attacked Hillary Clinton and called
on DOJ to investigate various allegations against Ms. Clinton.[1] One such allegation has included
inappropriate influence in the 2010 acquisition of Uranium One by Rosatom, the Russian nuclear
energy agency.[2] Responding both to the president and letters from House Judiciary Committee
Chairman Bob Goodlatte, DOJ is now considering the appointment of a second special counsel to
investigate Ms. Clinton.[3] In the meantime, Attorney General Jeff Sessions is under regular scrutiny
from the president and even the Senate Majority leader is suggesting that Mr. Sessions replace the

---

[1] *See* Matthew Nussbaum & Tara Palmeri, *Trump Can't Stop Obsessing About the Clintons*,
POLITICO (Mar. 28, 2017, 5:01 PM), https://www.politico.com/story/2017/03/trump-hillary-bill-
clinton-236602; Abigail Abrams, *President Trump Attacked Hillary Clinton over Her Emails.*
*Again.*, TIME, June 15, 2017, http://time.com/4820708/donald-trump-russia-investigation-hillary-
clinton-obstruction/; Associated Press, *Trump Tweets Fresh Attacks on Democrats and Hillary*
*Clinton Amid Reports of Looming Charges in Russia Probe*, L.A. TIMES, Oct. 29, 2017,
http://www.latimes.com/politics/la-pol-updates-trump-tweets-russia-republican-anger-
htmlstory.html.
[2] Lauren Carroll, *Fact-Checking Donald Trump's Tweets About Hillary Clinton and Russia*,
POLITIFACT (Mar. 28, 2017, 4:00 PM), http://www.politifact.com/truth-o-
meter/article/2017/mar/28/fact-checking-donald-trumps-tweets-about-hillary-c/.
[3] Mat Zapotosky, *Sessions Considering Second Special Counsel to Investigate Republican*
*Concerns, Letter Shows*, WASH. POST, Nov. 13, 2017,
https://www.washingtonpost.com/world/national-security/sessions-considering-second-special-
counsel-to-investigate-republican-concerns-letter-shows/2017/11/13/bc92ef3c-c8d2-11e7-b0cf-
7689a9f2d84e_story.html?utm_term=.fa50162b4a3d.



embattled Republican nominee in the race to fill his former seat in the Senate.[4] American Oversight submits this request to shed light on whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities.

## Requested Records

American Oversight requests that the Office of the Attorney General, the Office of the Deputy Attorney General, and the Office of Legislative Affairs produce the following within twenty business days:

> Records sufficient to identify all of the "senior federal prosecutors" who have been "directed" "to evaluate certain issues raised in [Congressman Robert Goodlatte's] letters," as indicated in the Department of Justice's November 13, 2017 response signed by Assistant Attorney General Stephen Boyd, attached for your convenience.

> Please provide all responsive records from July 27, 2017, through the date the search is conducted.

In addition to the records requested above, American Oversight also requests records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If DOJ uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.** Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[5] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American**

---

[4] Brian Naylor et al., *McConnell Talks Up Sessions As Write-In Candidate to Replace Roy Moore*, NPR (Nov. 14, 2017, 12:08 PM), https://www.npr.org/2017/11/14/564071391/ryan-sessions-add-to-gop-voices-saving-moore-accusers-are-credible.
[5] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

DOJ-17-0539

**Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.**[6]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DOJ's prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.**[7] **Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but DOJ's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that DOJ use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.**

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[8] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[9] Moreover, the *Vaughn* index "must describe *each* document or

---

[6] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work-related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[7] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

[8] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).

[9] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

DOJ-17-0539

portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."[10] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[11]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[12] Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, DOJ is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and DOJ can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k), American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way.[13] Moreover, the request is primarily and fundamentally for non-commercial purposes.[14]

---

[10] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphasis in original).
[11] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).
[12] *Mead Data Central*, 566 F.2d at 261.
[13] 28 C.F.R. § 16.10(k)(2).
[14] *Id.*

DOJ-17-0539

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[15] The requested records are directly related to the work of the highest levels of leadership at DOJ. There is significant interest in the subject of these records, both from the American people at large as well as the U.S. Congress.[16] The requested records will help American Oversight and the general public understand whether and to what extent political considerations are influencing or outweighing legal principles as DOJ sets its investigative priorities. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available. As noted, the subject of this request is a matter of public interest, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[17] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[18] American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, after receiving records regarding an ethics waiver received by a

---

[15] 28 C.F.R. § 16.10(k)(2)(i), (ii)(A)–(B).

[16] *See* Abrams, *supra* note 1; Associated Press, *supra* note 1; Carroll, *supra* note 2; *Uranium One Probe: Order to Lift 'Gag' on Russia Informant Came from Trump, Source Says*, FOX NEWS, Oct. 26, 2017, http://www.foxnews.com/politics/2017/10/26/uranium-one-probe-order-to-lift-gag-on-russia-informant-came-from-trump-source-says.html; Naylor et al., *supra* note 4; Nussbaum & Palmeri, *supra* note 1; Michael S. Schmidt & Maggie Haberman, *Justice Dept. to Weigh Inquiry Into Clinton Foundation*, N.Y. TIMES, Nov. 13, 2017, https://www.nytimes.com/2017/11/13/us/politics/justice-department-uranium-one-special-counsel.html; Eileen Sullivan, *What Is the Uranium One Deal and Why Does the Trump Administration Care So Much?*, N.Y. TIMES, Nov. 14, 2017, https://www.nytimes.com/2017/11/14/us/politics/uranium-one-hillary-clinton.html; The Washington Post, *Sessions Replacing Moore Could Solve Trump's Mueller Problem*, AL.COM (Nov. 14, 2017, 11:10 AM), http://www.al.com/opinion/index.ssf/2017/11/sessions_replacing_moore_could.html; Katie Bo Williams, *Judiciary Chairman Hints at Dissatisfaction with Sessions*, THE HILL (Nov. 14, 2017, 10:31 AM), http://thehill.com/homenews/administration/360265-judiciary-chairman-hints-at-dissatisfaction-with-sessions; Zapotosky, *supra* note 3.

[17] 28 C.F.R. § 16.10(k)(iii)(A)–(B).

[18] American Oversight currently has approximately 11,700 page likes on Facebook, and 37,400 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/ (last visited Nov. 20, 2017); American Oversight (@weareoversight), TWITTER, https://twitter.com/weareoversight (last visited Nov. 20, 2017).

DOJ-17-0539

senior DOJ attorney,[19] American Oversight promptly posted the records to its website and published an analysis of what the records reflected about DOJ's process for ethics waivers.[20] As another example, American Oversight has a project called "Audit the Wall," where the organization is gathering and analyzing information and commenting on public releases of information related to the administration's proposed construction of a barrier along the U.S.-Mexico border.[21]

Accordingly, American Oversight qualifies for a fee waiver.

<u>Conclusion</u>

We share a common mission to promote transparency in government. American Oversight looks forward to working with DOJ on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact Cerissa Cafasso at foia@americanoversight.org or 202.869.5246. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

---

[19] *DOJ Civil Division Response Noel Francisco Compliance,* AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance.
[20] *Francisco & the Travel Ban: What We Learned from the DOJ Documents,* AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.
[21] *Audit the Wall,* AMERICAN OVERSIGHT, www.auditthewall.org.

DOJ-17-0539



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General          *Washington, D.C. 20530*

The Honorable Robert W. Goodlatte          **NOV 1 3 2017**
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

Dear Chairman Goodlatte:

This responds to your letters dated July 27, 2017, and September 26, 2017, in which you and other Members request the appointment of a Special Counsel to investigate various matters, including the sale of Uranium One, alleged unlawful dealings related to the Clinton Foundation and other matters. We are sending identical responses to the other Members who joined your letter.

As noted during our prior meeting in response to your letters, the Department of Justice (Department) takes seriously its responsibility to provide timely and accurate information to Congress on issues of public interest, and seeks to do so in a non-political manner that is consistent with the Department's litigation, law enforcement, and national security responsibilities. Additionally, the Department's leadership has a duty to carefully evaluate the status of ongoing matters to ensure that justice is served and that the Department's communications with Congress are accurate and complete.

To further that goal, the Attorney General has directed senior federal prosecutors to evaluate certain issues raised in your letters. These senior prosecutors will report directly to the Attorney General and the Deputy Attorney General, as appropriate, and will make recommendations as to whether any matters not currently under investigation should be opened, whether any matters currently under investigation require further resources, or whether any matters merit the appointment of a Special Counsel. This will better enable the Attorney General and the Deputy Attorney General to more effectively evaluate and manage the caseload. In conducting this review, all allegations will be reviewed in light of the Principles of Federal Prosecution. (USAM 9-27.000)

As you know, consistent with longstanding policy, the Department does not ordinarily confirm or deny investigations, and this letter should not be construed to do so. While this policy can be frustrating, especially on matters of great public concern, it is necessary to ensure that the Department acts with fairness and thoughtfulness, and always in a manner consistent with the law and rules of the Department.

The Honorable Robert W. Goodlatte
Page Two

In addition, you must know the Department will never evaluate any matter except on the facts and the law. Professionalism, integrity, and public confidence in the Department's work is critical for us, and no priority is higher.

Your letter referenced various allegations related to the Federal Bureau of Investigation's (FBI) handling of the investigation into former Secretary of State Hillary Clinton's use of a personal email server. On January 12, 2017, the Department's Inspector General (IG) sent a letter to you and other Members advising that the IG's office was initiating a review of, among other things:

- Allegations that Department or FBI policies or procedures were not followed in connection with, or in actions leading up to or related to, the FBI Director's public announcement on July 5, 2016, and the Director's letters to Congress on October 28 and November 6, 2016, and that certain underlying investigative decisions were based on improper considerations;

- Allegations that the FBI Deputy Director should have been recused from participating in certain investigative matters;

- Allegations that Department and FBI employees improperly disclosed non-public information; and

- Allegations that decisions regarding the timing of the FBI's release of certain Freedom of Information Act documents on October 30 and November 1, 2016, and the use of a Twitter account to publicize the same, were influenced by improper considerations.

These investigations include issues raised in your letters. In addition, the Department has forwarded a copy of your letters to the IG so he can determine whether he should expand the scope of his investigation based on the information contained in those letters.

Once the IG's review is complete, the Department will assess what, if any, additional steps are necessary to address any issues identified by that review.

We will conduct this evaluation according to the highest standards of justice. We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Very truly yours,

Stephen E. Boyd
Assistant Attorney General

# Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

December 19, 2017

Mr. Austin R. Evers
American Oversight
1350 15th Street NW, Suite B255          Re:     DOJ-2018-001096 (AG)
Washington, DC 20005                              DOJ-2018-001144 (OLA)
foia@americanoversight.org                        VAV:BRB

Dear Mr. Evers:

     This is to acknowledge receipt of your Freedom of Information Act (FOIA) request made via the Office of Information Policy FOIAonline Portal and received in this Office on November 22, 2017 in which you requested records related to the drafting of the November 13, 2017 letter signed by Assistant Attorney General Stephen Boyd.  This response is made on behalf of the Offices of the Attorney General and Legislative Affairs.

     The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances."  <u>See</u> 5 U.S.C. 552 § (a)(6)(B)(i)-(iii). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options.

     We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request.

     I regret the necessity of this delay, but I assure you that your request will be processed as soon as possible.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact me by telephone at the above number or you may write to me at the above address.  You may also contact our FOIA Public Liaison, Douglas Hibbard, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Suite

-2-

11050, 1425 New York Avenue, NW, Washington, DC 20530-0001; telephone at 202-514-3642; or facsimile at 202-514-1009.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Brittnie R. Baker
Attorney-Advisor



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

December 21, 2017

Re:   DOJ-2018-001094 (AG)
      DOJ-2018-001097 (AG)
Mr. Austin R. Evers                     DOJ-2018-001145 (DAG)
American Oversight                      DOJ-2018-001146 (OLA)
1350 15th Street NW, Suite B255         DOJ-2018-001098 (AG)
Washington, DC  20005                   DOJ-2018-001147 (DAG)
foia@americanoversight.org              DRH:BRB

Dear Mr. Evers:

     This is to acknowledge receipt of your three Freedom of Information Act (FOIA) requests made via the Office of Information Policy FOIAonline Portal and received in this Office on November 22, 2017, in which you requested various records pertaining to Rep. Robert Goodlatte's July 27, 2017 and September 26, 2017 letters and the Department's November 13, 2017 response, including (1) records reflecting ethics issues or recusal obligations of the Attorney General, (2) records identifying "senior federal prosecutors who have been directed to evaluated certain issues," and (3) guidance to those prosecutors.  This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Legislative Affairs.

     The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances."  <u>See</u> 5 U.S.C. 552 § (a)(6)(B)(i)-(iii).  Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options.

     We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request.

-2-

To be clear, the administrative tracking numbers associated with your three requests are:

| Subject | Your Tracking Number | OIP Tracking Number |
|---|---|---|
| Ethics issues and potential recusal obligation | DOJ-17-0536 | DOJ-2018-001094 (AG) |
| Identifying "senior federal prosecutors" | DOJ-17-0539 | DOJ-2018-001097 (AG) DOJ-2018-001145 (DAG) DOJ-2018-001146 (OLA) |
| Guidance provided to "senior federal prosecutors" | DOJ-17-0540 | DOJ-2018-001098 (AG) DOJ-2018-001147 (DAG) |

I regret the necessity of this delay, but I assure you that your requests will be processed as soon as possible. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your requests, you may contact me by telephone at the above number or you may write to me at the above address. You may also contact our FOIA Public Liaison, Douglas Hibbard, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001; telephone at 202-514-3642; or facsimile at 202-514-1009.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Brittnie R. Baker
Attorney-Advisor

# Exhibit D



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

July 16, 2018

Re:    DOJ-2018-001094 (AG)
       DOJ-2018-001097 (AG)
       DOJ-2018-001096 (AG)
       DOJ-2018-001144 (OLA)
Mr. Austin R. Evers                    DOJ-2018-001145 (DAG)
American Oversight                     DOJ-2018-001146 (OLA)
1350 15ᵗʰ Street NW, Suite B255        DOJ-2018-001098 (AG)
Washington, DC  20005                  DOJ-2018-001147 (DAG)
foia@americanoversight.org             VRB:TAZ:JRS

Dear Mr. Evers:

    This is our final response to your four Freedom of Information Act (FOIA) requests dated November 22, 2017, in which you requested various records pertaining to Rep. Robert Goodlatte's July 27, 2017 and September 26, 2017 letters and the Department's November 13, 2017 response, including (1) records relating to the drafting of the November 13, 2017 letter signed by Assistant Attorney General Stephen Boyd, (2) records reflecting ethics issues or recusal obligations of the Attorney General, (3) guidance to prosecutors who have been directed to evaluate certain issues, and (4) records identifying "senior federal prosecutors who have been directed to evaluated certain issues. This response is made on behalf of the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), and Legislative Affairs (OLA).

    Please be advised that searches have been completed on behalf of the above-referenced offices.

    With respect to request (1), relating to the drafting of the November 13, 2017 letter signed by Assistant Attorney General Stephen Boyd, thirty-one pages containing records responsive to your request were located.  I have determined that nineteen of these pages are appropriate for release with certain excisions made pursuant to Exemptions 5, 6 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6) and (b)(7)(C), and copies are enclosed.  I have also determined that twelve additional pages containing records responsive to your request should be withheld in full pursuant to Exemption 5 of the FOIA.  Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege. Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.  Exemption 7(C) pertains to records or information compiled for law enforcement purposes, the release of which could

-2-

reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

With respect to requests (2) and (3), relating to records reflecting ethical issues or recusal obligations of the Attorney General[1] and guidance issued to prosecutors, aside from the Department's November 13, 2017 response to Rep. Goodlatte, no additional records responsive to your request were identified in the above-referenced offices. A copy of JMD's letter relating to request (2) is enclosed.

Lastly, with respect to request (4), relating to "[r]ecords sufficient to identify all of the 'senior federal prosecutors' who have been 'directed' 'to evaluate certain issues raised in [Congressman Robert Goodlatte's] letters," I note that in a March 29, 2018 letter to congressional committees, the Attorney General identified United States Attorney John W. Huber as leading the Department's evaluation of certain issues raised by House Judiciary Committee Chairman Goodlatte. A copy of this letter is enclosed. No additional records responsive to your request have been identified. To the extent that Mr. Huber engaged other staff to assist his efforts, records identifying such individuals, if requested, would likely be withheld in full pursuant to Exemptions 6, 7(A), and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(A) and (b)(7)(C). Exemption 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c) (2012 & Supp. IV 2016). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Michael Gerardi of the Department's Civil Division, Federal Programs Branch, at (202)-514-0680.

Sincerely,

Timothy Ziese
Senior Reviewing Attorney
For
Vanessa R. Brinkmann
Senior Counsel

Enclosures

---

[1] I understand that the Department's Justice Management Division (JMD) also responded to your request submitted to separately to that component for ethics-related records, and advised you on February 15, 2018 that no records were located.