UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT,

                Plaintiff,

   v.

U.S. DEPARTMENT OF JUSTICE,

                Defendant.

No. 1:18-cv-00319

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 2
BACKGROUND ........................................................................................................... 2
    I.      DOJ's Responses To Requests From The House Committee On The Judiciary For Investigation Of Election-Related Matters ............................................................. 2
    II.     Procedural History .................................................................................................. 4
STANDARD OF REVIEW ............................................................................................ 5
ARGUMENT ................................................................................................................. 6
    I.      DOJ's Search For Responsive Records Was Adequate ......................................... 6
    II.     Records Held By Other Components Are Outside The Scope Of Plaintiff's FOIA Requests ................................................................................................................ 11
CONCLUSION ............................................................................................................. 13

# INTRODUCTION

Defendant United States Department of Justice ("DOJ") moves for summary judgment in this action by Plaintiff Judicial Watch under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Although Plaintiff is unsatisfied with the outcome of the search for records conducted by DOJ's Office for Information Policy ("OIP"), DOJ has fulfilled its obligation under FOIA to perform a search "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Plaintiff's FOIA request sought records related to the Attorney General's decision to direct U.S. Attorney John W. Huber to evaluate issues raised in letters sent to former Attorney General Sessions and Deputy Attorney General Rosenstein by the Judiciary Committee of the House of Representatives. Based on direct consultation with the leadership offices responsible for this evaluation, DOJ concluded that no records responsive to Plaintiff's request exist, other than records that have already been made public by DOJ. Because DOJ fully discharged its obligations under the FOIA in responding to Plaintiff's FOIA request, DOJ respectfully requests that the Court enter summary judgment in its favor.

# BACKGROUND

**I.     DOJ's Responses To Requests From The House Committee On The Judiciary For Investigation Of Election-Related Matters**

On July 27, 2017, twenty members of the House Judiciary Committee, including Chairman Robert Goodlatte, sent a letter to former Attorney General Sessions and Deputy Attorney General Rosenstein calling on them "to appoint a second special counsel to investigate a plethora of matters connected to the 2016 election and its aftermath." Goodlatte July 27 Letter at 1, Brinkmann Decl., Ex. A. On September 26, 2017, Chairman Goodlatte, joined by thirteen other colleagues from the Judiciary Committee, sent a follow-up letter renewing the Committee's

request. Goodlatte Sept. 26 Letter at 3, Brinkmann Decl., Ex. A.

On November 13, 2017, Stephen E. Boyd, the Assistant Attorney General for the Office of Legislative Affairs, sent a letter responding to Chairman Goodlatte's request:

> As noted during our prior meeting in response to your letters, the Department of Justice (Department) takes seriously its responsibility to provide timely and accurate information to Congress on issues of public interest, and seeks to do so in a non-political manner that is consistent with the Department's litigation, law enforcement, and national security responsibilities. Additionally, the Department's leadership has a duty to carefully evaluate the status of ongoing matters to ensure that justice is served and that the Department's communications with Congress are accurate and complete.
>
> To further that goal, the Attorney General has directed senior federal prosecutors to evaluate certain issues raised in your letters. These senior prosecutors will report directly to the Attorney General and the Deputy Attorney General, as appropriate, and will make recommendations as to whether any matters not currently under investigation should be opened, whether any matters currently under investigation require further resources, or whether any matters merit the appointment of a Special Counsel. This will better enable the Attorney General and the Deputy Attorney General to more effectively evaluate and manage the caseload. In conducting this review, all allegations will be reviewed in light of the Principles of Federal Prosecution. (USAM 9-27.000)

Boyd Nov. 13 Letter at 1, Brinkmann Decl., Ex. A.

Former Attorney General Sessions provided a further update on this "evaluation" process in a letter to Chairman Goodlatte and other members of Congress dated March 29, 2018:

> As noted in Assistant Attorney General Stephen E. Boyd's November 13, 2017, letter to the House Committee on the Judiciary, I already have directed senior federal prosecutors to evaluate certain issues previously raised by the Committee….
>
> Specifically, I asked United States Attorney John W. Huber to lead this effort. Mr. Huber is an experienced federal prosecutor who was twice confirmed unanimously by the Senate as United States Attorney for the District of Utah in 2015 and 2017….
>
> Mr. Huber is conducting his work from outside the Washington, D.C. area and in cooperation with the Inspector General…. I receive regular updates from Mr. Huber and upon the conclusion of his review, will receive his recommendations as to whether any matters not currently under investigation

3

should be opened, whether any matters currently under investigation require
further resources, or whether any matters merit the appointment of a Special
Counsel.

Sessions Mar. 29 Letter at 3-4, Brinkmann Decl., Ex. A.

## II.     Procedural History

On November 22, 2018, Plaintiff American Oversight submitted a number of FOIA requests to the Department of Justice seeking background information about the decision to "evaluate" the issues raised in Chairman Goodlatte's letter. Plaintiff sent these requests to OIP and, depending on the request, requested that the Office of the Attorney General ("OAG"), the Office of the Deputy Attorney General ("ODAG"), the Office of Legislative Affairs ("OLA"), and the Justice Management Division ("JMD") produce responsive records, as noted below:

> *Recusal FOIA (JMD, OAG)* : All records reflecting any analysis of government or legal-ethics issues or evaluating any recusal obligations (including a conclusion that recusal was not necessary) related to the Attorney General's participation in connection with any decision relating to any investigation or prosecution (or potential investigation or prosecution) of any issues raised in either of Congressman Robert Goodlatte's letters of July 27, 2017, and September 26, 2017, attached for your convenience.
>
> *Prosecutors' FOIA (OAG, ODAG, OLA)*: Records sufficient to identify all of the "senior federal prosecutors" who have been "directed" "to evaluate certain issues raised in [Congressman Robert Goodlatte's] letters," as indicated in the Department of Justice's November 13, 2017 response signed by Assistant Attorney General Stephen Boyd, attached for your convenience.
>
> *Guidance FOIA (OAG, ODAG)*: All guidance or directives provided to the "senior federal prosecutors" who have been "directed" "to evaluate certain issues raised in [Congressman Robert Goodlatte's] letters," as indicated in the Department of Justice's November 13, 2017 response signed by Assistant Attorney General Stephen Boyd, attached for your convenience, regarding their performance of that task.
>
> *Drafting FOIA (OAG, OLA)*: All records relating to the drafting of the November 13, 2017 letter signed by Assistant Attorney General Stephen Boyd, attached for your convenience, responding to the two letters from Congressman Robert Goodlatte dated July 27, 2017, and September 26, 2017, also attached.

Compl. ¶¶ 7, 10, 14, 18; *see also* Plaintiff's FOIA Requests, Brinkmann Decl., Ex. B.    DOJ's

search was spearheaded by OIP, which is responsible in the first instance for "determin[ing] whether records responsive to access requests exist and, if so, whether they can be released in accordance with the FOIA" for OAG, ODAG, and OLA.  Brinkmann Decl. ¶¶ 1, 9.

Based on these efforts, OIP provided a final response on behalf of OAG, ODAG, and OLA on July 16, 2018.  (JMD provided a separate response respecting the "Recusal FOIA" that is not in dispute.)  OIP identified no records responsive to the "Recusal FOIA," and provided Plaintiff with a release of records responsive to the "Drafting FOIA" based on an electronic records search of the Office of Legislative affairs between July 27, 2017 and November 15, 2017, which included correspondence between OLA and officials from other leadership offices.  Ziese July 16 Letter at 1-2, Brinkmann Decl., Ex. D.  With respect to the "Prosecutors' FOIA," OIP responded that Attorney General Sessions "identified United States Attorney John W. Huber as leading the Department's evaluation of certain issues raised by … Chairman Goodlatte…. No additional records responsive to your request have been identified." *Id.* at 2.  And with respect to the "Guidance FOIA," OIP stated that "no additional records responsive to [Plaintiff's] request were identified" other than the November 13 letter from Mr. Boyd.  *Id.*

## STANDARD OF REVIEW

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In a FOIA action, summary judgment may be granted on the basis of information provided in declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).  "To demonstrate that a search

for documents was reasonable at the summary judgment phase, a federal agency may submit 'reasonably detailed' affidavits or declarations that describe the search performed." *Bigwood v. DOD*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (citation omitted). Agency declarations "are afforded a presumption of good faith, and can be rebutted only with evidence that the agency's search was not made in good faith." *Boehm v. FBI*, 948 F. Supp. 2d 9, 19 (D.D.C. 2013) (citations omitted*); accord SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (the agency's FOIA search declaration is entitled to "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents" (internal citation omitted)).

To obtain summary judgment on the question of search adequacy, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted). Searching for records responsive to a FOIA request is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro-manage the executive branch." *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

**ARGUMENT**

I. **DOJ's Search For Responsive Records Was Adequate**

After reviewing these requests, OIP "determined that a direct inquiry to knowledgeable staff in the Office of the Attorney General (OAG) would be the most logical and effective search method." Brinkmann Decl. ¶ 14. This "is the search method typically employed in response to FOIA requests which seek specific, clearly-defined records on topics with which current leadership office staff are personally familiar, and are able to provide informed input on the

6

existence and location of potentially responsive records." *Id.* ¶ 12. Accordingly, OIP spoke to the Counselor to the Attorney General "who is responsible for assisting OIP with FOIA requests for OAG documents to ascertain (1) who the Attorney General directed to evaluate these matters and (2) what guidance or directives, if any, were issued," over the course of "several discussions." *Id.* ¶¶ 14, 16. To respond to OIP's inquiries, this senior official spoke with other Department officials with direct knowledge of the subject matter of Mr. Huber's work, including the then-Chief of Staff to the Attorney General, as well as with Mr. Huber, about Plaintiff's requests. *Id.* ¶ 14.

Through these consultations, OIP learned that Mr. Huber "was the only senior federal prosecutor whom the Attorney General directed to look into matters raised by Chairman Goodlatte, as well as the only prosecutor referenced in the Department's November 13, 2017 and March 29, 2018 responses to Chairman Goodlatte." *Id.* Notwithstanding the use of plural terms—"senior federal prosecutors" —in DOJ's letters to Congress, "OAG confirmed that there was only one federal prosecutor directed to evaluate and report to the Attorney General and Deputy Attorney General on these matters: U.S. Attorney Huber." *Id.* This conclusion was confirmed by OIP's search of electronic records within OLA for records responsive to Plaintiff's "Drafting FOIA." *Id.* ¶ 16. Despite conducting a broad search for records in the OLA using the term "Goodlatte" between July 27, 2017 and November 15, 2017, OIP discovered no records disclosing the number or identity of any federal prosecutors directed by the Attorney General to evaluate the matters discussed in Chairman Goodlatte's letters, other than Mr. Huber. *Id.*

OIP also learned through these consultations "there were no written guidance or directives issued to Mr. Huber in connection with this directive, either by the Attorney General, or by other senior leadership office staff." *Id.* ¶ 15. That is because "details of Mr. Huber's

direction were addressed orally, in meetings and discussions among a small group of Department officials, including the Attorney General, the Deputy Attorney General, the [then-]OAG Chief of Staff, the Principal Associate Deputy Attorney General, and U.S. Attorney Huber." *Id.* OIP also "took the additional step of conferring with the [ODAG] regarding the information provided … by OAG" in concluding "that further searches would be unlikely to identify records relevant to" the "Guidance FOIA" request. *Id.*

Plaintiff may argue that OIP's search for records responsive to the "Prosecutor's FOIA" was inadequate because OIP did not search OLA, which was principally responsible for preparing the initial response to Mr. Goodlatte's letter, for responsive records. But OIP's consultations with the Attorney General's office confirmed that DOJ had already publicly released "records sufficient to identify all of the 'senior federal prosecutors'" directed to evaluate the issues in Congressman Goodlatte's letters (i.e., the Attorney General's March 29 letter identifying Mr. Huber). In light of that public disclosure, there was no need to search OLA for this information. In any event, OIP *did* conduct a search of OLA—specifically, of the electronic records of all officials within OLA—in conjunction with Plaintiff's "Drafting FOIA" request, and that search yielded no records identifying the identity or number of any other senior prosecutors working on the evaluation other than Mr. Huber. Brinkman Decl. ¶ 15 & n.5.

Plaintiff may also contend that the "Prosecutor's FOIA" search is inadequate because DOJ identified Mr. Huber as the only individual the Attorney General "directed" to evaluate these issues, while the letters from DOJ to Chairman Goodlatte use the plural term "senior federal prosecutors." But it was reasonable for OIP to conclude that a further search of the Attorney General and the Deputy Attorney General offices was not necessary after its consultations with OAG, who confirmed, after discussions with the then-Chief of Staff for the

Attorney General and Mr. Huber, that "there was only one federal prosecutor directed to evaluate and report to the Attorney General and Deputy Attorney General on these matters: U.S. Attorney Huber."  Brinkman Decl. ¶ 14.

In addition, Plaintiff will likely assert that a search of the electronic records of numerous officials within the offices of the Attorney General and Deputy Attorney General, including Attorney General Sessions, Deputy Attorney General Rosenstein, and their chiefs of staff, is necessary to complete an adequate search for records responsive to the "Guidance FOIA" request.  Plaintiff is concerned, among other things, that some documentary record authorizing Mr. Huber to undertake this evaluation must have been generated by OAG or ODAG.  But, as noted, OIP's consultations with DOJ involved input from senior officials from OAG and ODAG with direct knowledge of Mr. Huber's work, including Mr. Huber himself.  Brinkmann Decl. ¶ 15.  They confirmed that "no written guidance or directives" were "issued to Mr. Huber in connection with" the Attorney General's directive to evaluate the matters raised by Chairman Goodlatte.  *Id.*  OIP's conclusion that no further search was necessary was a reasonable one given "the small group of Department officials" involved in directing the details of Mr. Huber's evaluation and Mr. Huber's confirmation that no such written guidance was provided.  Brinkmann Decl. ¶¶ 14-15.  Although Plaintiff may have expected to find some documentation of the assignment of the evaluation to Mr. Huber, "the issue to be resolved" in this case "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The failure to generate a document Plaintiff was expecting to uncover does not demonstrate that OIP's conclusion is unreasonable.

OIP's search fully discharged its obligations under FOIA.  FOIA does not require an

agency to conduct additional searches for responsive records if it believes it has already done so and that further searching would be needless. *See, e.g.*, *Performance Coal Co. v. U.S. Dep't of Labor*, 847 F. Supp. 2d 6, 12-13 (D.D.C. 2012) (agency's determination that searching only two of its eighteen regional offices was "reasonably tailored" to plaintiff's request upheld); *Thomas v. Comptroller of Currency*, 684 F. Supp. 2d 29, 32-33 (D.D.C. 2010) (affirming agency's decision not to conduct a search of its files for records based on its determination that such records were not likely to be maintained in its record-keeping systems). Accordingly, this Court has repeatedly held that an agency need not search an office for records that are unrelated to that office's functions or that is not likely to have responsive records, based on their knowledge of the office's activities.[1]

For instance, in *American-Arab Anti-Discrimination Committee v. U.S. Dep't of Homeland Security*, 516 F. Supp. 2d 83 (D.D.C. 2007), plaintiff challenged the adequacy of Homeland Security's search for information on the ethnicity and religion of 237 individuals who had recently been detained by Immigration and Customs Enforcement. But "rather than detail the procedures for responding to its FOIA requests," DHS's declaration stated that ICE did not maintain information related to ethnicity and religion, based on "information with which [the declarant] is personally familiar as well as his conversations with ICE Counsel and … with several ICE Supervisory and Senior Special Agents." *Id.* at 88. The Court concluded that this

---

[1] *See, e.g., All Party Parliamentary Grp. on Extraordinary Rendition v. U.S. Dep't of Defense*, 134 F. Supp. 3d 201, 206 (D.D.C. 2015); *Cunningham*, 40 F. Supp. 3d at 85-86; *Reyes*, 991 F. Supp. 2d at 27; *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 11-12 (D.D.C. 2013); *Sack v. U.S. Dep't of Defense*, 6 F. Supp. 3d 78, 81, 83, 86-89 (D.D.C. 2013), *aff'd in part and rev'd in part on other grounds*, 823 F.3d 768, (D.C. Cir. 2016); *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83 (D.D.C. 2007); *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000); *Roberts v. Dep't of Justice*, No. 92-1707, 1995 WL 356320, at * 1 (D.D.C. Jan. 29, 1993).

declaration was sufficient to "explain why a search would be futile and is unnecessary," and upheld the adequacy of DHS's search. *Id.*

Likewise, the search performed in this case was sufficient to respond to Plaintiff's request. OIP reached out to the leadership offices within DOJ that initiated the evaluation of the issues raised in Chairman Goodlatte's letter. In turn, OAG consulted with individuals who have direct knowledge of the evaluation, including Mr. Huber, who is leading this effort. The answers OIP received, based on information from individuals well positioned to know the details of Mr. Huber's work, pretermitted the need to undertake further searching. Accordingly, summary judgment in favor of the Defendants is appropriate here.

## II.   Records Held By Other Components Are Outside The Scope Of Plaintiff's FOIA Requests

An agency is "bound to read [a FOIA request] as drafted, not as either agency officials or [the requester] might wish it was drafted." *See Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). Indeed, an agency is obligated to release only those records that a particular request "reasonably describes," 5 U.S.C. § 552(a)(3)(A). *See also LaCedra v. Exec. Office for U.S. Att'ys*, 317 F.3d 345, 347-48 (D.C. Cir. 2003). Although an agency must interpret FOIA requests "liberally and reasonably … [it] need not extend the meaning of the request to include things not asked for." *Wallick v. Agricultural Marketing Serv.*, 281 F. Supp. 3d 56, 68 (D.D.C. 2017).

Plaintiff specifically directed the "Prosecutors' FOIA" and "Guidance FOIA" requests to the Office of the Attorney General, the Office of the Deputy Attorney General, and the Office of Legislative Affairs. As discussed above, through consultations with the Attorney General's office, which involved discussions with the then-Chief of Staff to the Attorney General and with Mr. Huber himself, OIP learned that only Mr. Huber had been directed by the Attorney General

to evaluate the issues raised in Congressman Goodlatte's letters, and that no records existed of guidance or directives provided to Mr. Huber by the leadership offices.

Plaintiff may contend that OIP's search should have extended to all records under the control of the Executive Office of the United States Attorney ("EOUSA"), an office that Plaintiff did not identify in its requests. Such an expansion is unwarranted. The Attorney General made the decision to evaluate the issues raised in Chairman Goodlatte's letters, and to select Mr. Huber to lead that effort. *See* Sessions March 29 Letter, at 3-4, Brinkmann Decl., Ex. A. Plaintiff's request seeks records sufficient to identify those individuals directed to perform the evaluation by the Attorney General, and whatever directives or guidance were provided to those individuals. Naturally, OAG would be in the best position to know who those individuals are and what records of guidance provided to those individuals exist. Indeed, in the course of its consultations with OIP, OAG reached out to Mr. Huber in order to confirm this information. Given OAG's role in spearheading the evaluation and the involvement of Mr. Huber in the consultation, there is no need to further search records from the EOUSA.

In addition, Plaintiff may suggest, in connection with the "Prosecutors' FOIA," that if Mr. Huber asked others to assist him, it would be entitled to records sufficient to identify them. But Plaintiff specifically asked for the disclosure of records sufficient to identify "the 'senior federal prosecutors' who have been 'directed' 'to evaluate certain issues raised in [Congressman Robert Goodlatte's] letters,' *as indicated* in the Department of Justice's November 13, 2017 response signed by Assistant Attorney General Stephen Boyd." Compl. ¶ 10 (emphasis added). DOJ's responses, in turn, indicate that "the *Attorney General* has directed senior federal prosecutors to evaluate certain issues raised in your letters." Boyd Nov. 13 Letter at 1, Brinkmann Decl., Ex. A. Plaintiff's request was not for records identifying individuals that those

12

directed to perform the evaluation may have asked to assist them, but only for records identifying individuals that former Attorney General Sessions directed to work on the evaluation. And notwithstanding the use of a plural in DOJ's responses, Ms. Brinkmann's declaration establishes that the only senior prosecutor former Attorney General Sessions "directed" to carry out the evaluation of issues raised by Chairman Goodlatte's letter, in the sense indicated by the November 13 letter, is Mr. Huber. Brinkmann Decl. ¶ 14.

Plaintiff's dissatisfaction with the results of the search it requested is not a reason to conduct additional searches outside the scope of its request. Plaintiff can always request a search of such records separately if it desires. Accordingly, this argument provides no sound reason to call the adequacy of DOJ's search into question.

## CONCLUSION

For the foregoing reasons, DOJ respectfully requests that the Court grant its motion and enter summary judgment in its favor.

Dated: November 16, 2018              Respectfully submitted,

                                      JOSEPH H. HUNT
                                      Assistant Attorney General

                                      MARCIA BERMAN
                                      Associate Branch Director

                                      /s/ *Michael J. Gerardi*
                                      Michael J. Gerardi (D.C. Bar No. 1017949)
                                      Trial Attorney
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      20 Massachusetts Ave. NW, Room 7210
                                      Washington, D.C. 20530
                                      Tel: (202) 616-0680
                                      Fax: (202) 616-8460
                                      E-mail: michael.j.gerardi@usdoj.gov

                                      *Attorneys for Defendant*