**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-319 (CRC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO STAY SUMMARY JUDGMENT BRIEFING
<u>AND FOR LEAVE TO SEEK LIMITED DISCOVERY PURSUANT TO RULE 56(d)</u>**

# TABLE OF CONTENTS

Introduction ............................................................................................................... 1

Background ................................................................................................................ 3

Argument .................................................................................................................. 8

I.     Legal Standards ............................................................................................. 8

II.    Summary Judgment Is Premature in This Case. ...................................... 11

III.   Limited Discovery Is Necessary and Appropriate. ................................. 14

      A.    The Department defended its initial determination that there were no responsive records with a declaration that relied on representations of senior DOJ officials. .............................................................. 14

      B.    The discovery of a responsive email that directly contradicts representations made by senior DOJ officials gives rise to non-speculative reason to doubt the good-faith presumption typically afforded an agency declaration. ................................................ 17

      C.    In light of the non-speculative reason to doubt the presumption of regularity, American Oversight is entitled to discovery. ......................... 19

IV.   Plaintiff's Proposed Discovery Is Necessary to Establish Material Facts Regarding the Adequacy of the Search .............................................. 21

      A.    There exist unknown facts necessary to resolve this litigation. ................ 22

      B.    Defendant and former Department officials are in sole possession of the unknown facts necessary to resolve this litigation. ........................ 24

V.    Plaintiff's Proposed Discovery Plan Is Reasonable and Proportionate to the Needs of This Case. .................................................................... 27

VI.   Conclusion .................................................................................................. 28

**Cases**

*Bangoura v. U.S. Dep't of the Army*,
   No. 05-0311, 2006 WL 3734164 (D.D.C. Dec. 8, 2006)........................................................ 20

*Banks v. Veneman*,
   402 F. Supp. 2d 43 (D.D.C. 2005) ...................................................................................... 11

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
   No. 05-2078, 2006 WL 1518964 (D.D.C. June 1, 2006)............................................ 18, 19, 20

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Veterans Affairs*,
   828 F. Supp. 2d 325, 334 (D.D.C. 2011) ........................................................................ 19, 20

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*,
   185 F. Supp. 3d 26 (D.D.C. 2016) .................................................................................. 9, 12, 13

*Convertino v. U.S. Dep't of Justice*,
   684 F.3d 93 (D.C. Cir. 2012) ........................................................................................ 11, 22, 24

*Fed. Deposit Ins. Corp. v. Galan-Alvarez*,
   No. 15-mc-752, 2015 WL 5602342 (D.D.C. Sept. 4, 2015).................................................... 28

*Founding Church of Scientology v. Nat'l Sec. Agency*,
   610 F.2d 824 (D.C. Cir. 1979) ........................................................................................ 9, 11, 14

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   127 F. Supp. 2d 228 (D.D.C. 2000) ...................................................................................... 19

*Judicial Watch, Inc. v. U.S. Dep't of State*,
   344 F. Supp. 3d 77 (D.D.C. 2018) ........................................................................................ 10

*Landmark Legal Found. v. Envtl. Prot. Agency*,
   959 F. Supp. 2d 175 (D.D.C. 2013) ................................................................................. passim

*Lantz v. U.S. Dep't of Commerce*,
   316 F. Supp. 3d 523 (D.D.C. 2018) ........................................................................................ 8

*Long v. U.S. Dep't of Justice*,
   10 F. Supp. 2d 205 (N.D.N.Y. 1998)................................................................................ 20, 21

*Payne v. District of Columbia*,
   859 F. Supp. 2d 125 (D.D.C. 2012) ...................................................................................... 28

*Pub. Citizen Health Research Group v. Food & Drug Admin.*,
    997 F. Supp. 56 (D.D.C. 1998) ........................................................................... 9, 10

*Pulliam v. Envtl. Prot. Agency*,
    292 F. Supp. 3d 255 (D.D.C. 2018) ................................................................ 10, 20

*SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*,
    926 F.2d 1197 (D.C. Cir. 1991) ......................................................................... 9, 14

*United States v. Chem. Found., Inc.*,
    272 U.S. 1 (1926) ................................................................................................. 1, 14

*United States v. Morgan*,
    313 U.S. 409 (1941) ............................................................................................... 27

*Weisberg v. U.S. Dep't of Justice*,
    627 F.2d 365 (D.C. Cir. 1980) ("*Weisberg I*") .......................................... 10, 20, 27

*Weisberg v. U.S. Dep't of Justice*,
    705 F.2d 1344 (D.C. Cir. 1983) ("*Weisberg II*") ........................................ 9, 12, 14

**Rules**

Fed. R. Civ. P. 56(d)(2) ........................................................................................ 10

**Treatises**

U.S. Dep't of Justice, Guide to the Freedom of Information Act,
    "Litigation Considerations" (Nov. 26, 2013) ...................................................... 10

## INTRODUCTION

Shortly before Defendant was due to file its reply and cross-opposition in the course of summary judgment briefing, during which Defendant vigorously defended its claim that no documents responsive to American Oversight's Freedom of Information Act (FOIA) request existed (a "no-records response"), Defendant informed American Oversight that it had in fact located a responsive record. When that record was eventually produced, it directly contradicted the agency's sworn representations to the Court and raised grave questions regarding both the thoroughness of Defendant's search and whether the agency has complied in good faith with its duties under FOIA. In order to resolve those serious questions, American Oversight respectfully seeks a stay of the briefing schedule currently in place and the Court's leave to seek limited discovery.

Although FOIA cases are typically resolved without discovery and rely instead on detailed declarations from the agency, this reliance rests on the presumption of regularity, that is, the assumption that government officials are properly discharging their official duties in good faith. *See United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). That presumption is no longer appropriate here, where the sworn declaration submitted by Defendant U.S. Department of Justice ("DOJ" or "the Department") in support of its motion for summary judgment relied upon material representations by senior DOJ officials that are directly contradicted by the facts revealed in the belatedly produced responsive record. Any presumption of regularity is fully rebutted by this record: it is directly responsive and was located firmly

within any reasonable target search area, and its very existence is clearly at odds with multiple, specific representations to the contrary contained in DOJ's sworn declaration.

American Oversight's FOIA request sought documentation of a decision by the Attorney General to deputize the U.S. Attorney for the District of Utah to investigate a panoply of politically charged allegations identified by members of Congress related to former Secretary of State Hillary Clinton and allegations of abuse by officials at DOJ and the Federal Bureau of Investigation (FBI) surrounding the 2016 presidential election—matters of great import to the American people. The importance and sensitivity of this extraordinary delegation of authority have only been further highlighted by now-Attorney General William Barr's recent testimony that he believes "spying"—carried out by federal law enforcement—occurred during the 2016 election period.

Contrary to logic and common sense regarding a matter of this magnitude, senior DOJ officials represented that no written guidance or directives existed in connection with this extraordinarily broad and politically sensitive investigation delegated by the Attorney General to the U.S. Attorney for the District of Utah. Per the Department's declaration, these senior DOJ officials, including the former Chief of Staff to the Attorney General Matthew Whitaker and U.S. Attorney John Huber himself, affirmatively represented that any guidance and direction given to the U.S. Attorney in connection with this highly sensitive review, which falls outside the Utah U.S. Attorney's ordinary statutory jurisdiction, was only provided orally during "meetings and discussions." The responsive record that was belatedly produced shows that all of these representations were flatly untrue. Indeed, it shows that the very officials who made these misrepresentations were directly and personally involved in the provision of formal written guidance: the Chief of Staff to the Attorney General personally emailed a formal, signed

directive from the Attorney General to the U.S. Attorney in question defining the scope of this extraordinary inquiry. Notably, the belatedly produced record was only finally disclosed after both Mr. Whitaker and Mr. Sessions were no longer at the Department.

This clear and contradictory evidence demonstrates that Defendant's declarations in this matter may no longer be relied upon by American Oversight or the Court as the sole source of evidence in this case, and raises grave questions regarding whether the senior DOJ officials who made these misrepresentations were discharging their official duties properly and in good faith. The failure to identify this responsive record during the initial search, whether as the result of gross negligence or a deliberate effort to frustrate FOIA and hide nonexempt government records from public view, highlights the critical importance of independently testing the evidence to evaluate the adequacy of DOJ's search to uncover all relevant records. To develop this evidence regarding the adequacy of Defendant's search and as necessary to oppose Defendant's motion for summary judgment, the briefing schedule currently in place should be stayed and American Oversight must first be afforded limited discovery to obtain factual evidence necessary to effectively litigate the remaining issues in this matter.

## BACKGROUND

In July and September 2017, Representative Bob Goodlatte, then-Chairman of the House of Representatives Committee on the Judiciary ("the Committee"), and several other members of the Committee signed a letter to then-Attorney General Jeff Sessions and Deputy Attorney General Rod Rosenstein requesting the appointment of a second special counsel to investigate numerous actions taken by persons who served in the executive branch during the Obama administration, including former Secretary of State Hillary Clinton and numerous DOJ and FBI officials. Decl. of Counsel in Supp. of P.'s Mot. to Stay Summ. J. Briefing and for Leave to Seek

Limited Discovery Pursuant to Rule 56(d) ("Cafasso Decl."), Ex. A ("Goodlatte Letters"). On November 13, 2017, the Assistant Attorney General for Legislative Affairs, Stephen E. Boyd, responded to the Committee's letters and stated that "the Attorney General has directed senior federal prosecutors to evaluate certain issues raised in your letters." Cafasso Decl., Ex. B ("Boyd Response").

Shortly thereafter, Plaintiff American Oversight submitted several Freedom of Information Act (FOIA) requests to Defendant on November 22, 2017, seeking records that would inform the public as to the nature and scope of the new investigation that the agency was undertaking as referenced in the Boyd Response. Cafasso Decl. ¶ 6. One such request sought the following records from the Office of the Attorney General (OAG) and the Office of the Deputy Attorney General (ODAG):

> All guidance or directives provided to the "senior federal prosecutors" who have been "directed" "to evaluate certain issues raised in [Congressman Robert Goodlatte's] letters," as indicated in the Department of Justice's November 13, 2017 response signed by Assistant Attorney General Stephen Boyd, attached for your convenience, regarding their performance of that task.

Cafasso Decl., Ex. D ("Guidance FOIA").[1]

---

[1] American Oversight also filed a FOIA request seeking "[r]ecords sufficient to identify all of the 'senior federal prosecutors'" referenced in the Boyd Response. *See* Compl. ¶ 10, ECF No. 1; Cafasso Decl., Ex. C ("Prosecutors FOIA"). In July 2018, the Department responded with a record that identified only one such prosecutor—U.S. Attorney John Huber—who had been directed to undertake a review. Cafasso Decl., Ex. E at 2 (DOJ July 2018 FOIA Response). The Department moved for summary judgment as to the adequacy of its searches for both the Prosecutors FOIA and the Guidance FOIA. *See* Def.'s Mot for Summ. J., ECF No. 16. In opposing the Department's motion and cross-moving for summary judgment, American Oversight withdrew its challenge regarding the adequacy of the Department's search for records responsive to the Prosecutors FOIA "in light of the Department's sworn declaration that the representation to Congress that multiple senior prosecutors had been assigned was false." Mem. of Points & Authorities in Supp. of P.'s Cross-Mot. for Summ. J & in Opp'n to Def.'s Mot. for Summ. J. at 4–5 n.1 (citing Brinkmann Decl. ¶ 14).

American Oversight initiated the instant litigation on February 12, 2018, after the

Department failed to make a timely determination as required by law. *See* Compl., ECF No. 1.

On July 16, 2018, the Department issued its final determination for the Guidance FOIA stating

that OAG and ODAG did not identify any responsive records. Cafasso Decl., Ex. E at 2 (DOJ

July 2018 FOIA Response).

The Department moved for summary judgment on November 16, 2018. Def.'s Mot for

Summ. J., ECF No. 16. In support of its motion, the Department submitted the sworn declaration

of Vanessa R. Brinkmann, Senior Counsel in the Office of Information Policy (OIP). Decl. of

Vanessa R. Brinkmann, ECF No. 16-3 ("Brinkmann Decl.") (also attached hereto as Cafasso

Decl., Ex. F). The Declarant stated that OIP had "determined that a direct inquiry to

knowledgeable staff in [OAG] would be the most logical and effective search method."

Brinkmann Decl. ¶ 14. The Declarant, therefore, "contacted the Counselor to the Attorney

General in OAG who is responsible for assisting OIP with FOIA requests for OAG documents to

ascertain . . . what guidance or directives, if any, were issued." *Id.* The Declarant then

represented that the Counselor "conferred with other Department officials with direct knowledge

of the subject matter, including the then-OAG Chief of Staff and U.S. Attorney Huber." *Id.*

Although never named in the declaration, the "then-OAG Chief of Staff" during the relevant

time period was Matthew Whitaker. Cafasso Decl. ¶ 17.

The Declarant went on to state that "OAG"—without reference to a specific person in the

office—"advised that, when the Attorney General directed Mr. Huber to evaluate these matters,

no written guidance or directives were issued to Mr. Huber in connection with this directive,

either by the Attorney General, or by other senior leadership office staff." Brinkmann Decl. ¶ 15.

The Declarant further stated that "OAG" advised that direction was provided orally "in meetings

and discussions among a small group of Department officials, including the Attorney General, the Deputy Attorney General, the OAG Chief of Staff, the Principal Associate Deputy Attorney General, and U.S. Attorney Huber." *Id.*[2]

However, at approximately 9:04 p.m. on Thursday, February 28, 2019—the same day on which Defendant's reply and response to American Oversight's cross-motion for summary judgment was due—the Department notified American Oversight that "OIP learned this evening of a record responsive to American Oversight's 'Guidance FOIA' request that has not previously been released." Cafasso Decl. ¶ 20. Matthew Whitaker left his position at the Department of Justice two days later, on Saturday, March 2, 2019. *Id.* ¶ 21. At the end of the following week, shortly after close of business on Friday, March 8, 2019, the Department produced the responsive record in full without any claim of exemption; the production consisted of one email and two substantive attachments. *See* Cafasso Decl. ¶¶ 24–27; Cafasso Decl., Ex. G (DOJ March 2019 Supplemental FOIA Response).

The email, dated November 22, 2017, is from Mr. Whitaker to U.S. Attorney Huber with the subject line "Letter from Attorney General" and a body that reads, in full, "As we discussed. MW". Cafasso Decl. ¶ 25; Cafasso Decl., Ex. G at 3 ("the Whitaker Email"). The first substantive attachment is a formal letter dated November 22, 2017, to Mr. Huber signed by Attorney General Sessions. Cafasso Decl. ¶ 26; Cafasso Decl., Ex. G at 4 ("the Attorney General Directive"). In this directive, the Attorney General directs Mr. Huber to review the matters raised

---

[2] Notably, in the Declaration this list is prefaced by "including," suggesting that it is not a complete account of all of the participants present for any relevant meetings or discussions. The Declaration also identifies these participants only by title; Plaintiff presumes that the identified participants are then-Attorney General Jeff Sessions, Deputy Attorney General Rod Rosenstein, then-OAG Chief of Staff Matthew Whitaker, then-Principal Associate Deputy Attorney General Robert Hur, and U.S. Attorney John Huber. *See* Cafasso Decl. ¶¶ 17, 22, 29–31.

in Assistant Attorney General Boyd's letter, Ex. G at 4—in other words the letter that formed the basis of American Oversight's FOIA request. The letter further specifies the Attorney General's request that Mr. Huber "make recommendations to [the Attorney General] or the Deputy Attorney General, as appropriate.*" Id*. The second substantive attachment is a copy of the Boyd Response. *See* Cafasso Decl. ¶ 27; Cafasso Decl., Ex. G at 5–6 ("Boyd Response").

On April 4, 2019, Defendant provided a supplemental response to the Guidance FOIA stating that an additional electronic search did not result in locating additional responsive records. Cafasso Decl. Ex. H (DOJ April 2019 Supplemental FOIA Response). On April 10, 2019, Defendant informed American Oversight that the April response was the result of a supplemental search of: (1) electronic mail of former Attorney General Jeff Sessions, Deputy Attorney General Rod Rosenstein, former OAG Chief of Staff Matthew Whitaker, former Principal Associate Deputy Attorney General Robert Hur, U.S. Attorney John Huber, and two personal assistants to former Attorney General Sessions; and (2) the Executive Secretariat for official communications with Mr. Huber. Cafasso Decl. ¶ 29.

Defendant has yet to fully explain to American Oversight how it came to finally discover the Whitaker Email, including its attachments, or why it concluded that the limited supplemental search was sufficient to uncover all relevant records. Nor has Defendant explained how it failed to identify—even after speaking with officials with direct knowledge—a formal, written directive signed by the Attorney General to a U.S. Attorney requesting an inquiry into numerous politically sensitive allegations related to former presidential candidate Hillary Clinton, the actions of the FBI surrounding the 2016 presidential election, and other sensitive matters. And Defendant has not produced or identified any other copy or draft of the Attorney General's

formal order directing this sensitive and extraordinary evaluation by a U.S. Attorney. Cafasso Decl. ¶ 33.

The parties are currently in the midst of summary judgment briefing regarding the adequacy of the Department's search to uncover all records responsive to the Guidance FOIA. The Department moved for summary judgment on November 16, 2018. *See* ECF Nos. 16, 17. American Oversight opposed and cross-moved for summary judgment briefing on December 13, 2018. *See* ECF Nos. 18, 19. Defendant first sought a stay of briefing in light of a lapse of the Department's appropriations. *See* ECF No. 20, Dec. 26, 2018. The agency then sought an extension on the evening its response-reply was due as a result of the discovery of the Whitaker Email. *See* ECF No. 22, Feb. 28, 2019. Prior to the release of the Whitaker Email, Defendant proposed resuming summary judgment briefing on the following schedule: Defendant's response-reply brief would be due on April 26, 2019, and Plaintiff's cross-reply would be due on May 15, 2019. *See* Joint Status Report ¶ 4, ECF No. 23, Mar. 7, 2019. At that time Plaintiff stated that it was not in a position to evaluate Defendant's proposed schedule absent further information about the then-yet-to-be-produced responsive record and DOJ's planned supplemental search, but proposed notifying Defendant and the Court by April 15, 2019, if it concluded that a different briefing schedule would be appropriate. *See id.* ¶ 5. The Court entered Defendant's proposed scheduled but noted that "Plaintiff may move to modify the above schedule for good cause after reviewing the records." *See* Minute Orders, Mar. 8 & 11, 2019.

## ARGUMENT

### I.   Legal Standards

Summary judgment is typically the proper mechanism by which courts resolve legal disputes in FOIA litigation. *Lantz v. U.S. Dep't of Commerce*, 316 F. Supp. 3d 523, 527

(D.D.C. 2018) (citing *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). It is the agency's burden to demonstrate the adequacy of its search for responsive records, which is often met through the submission of detailed and non-conclusory sworn declarations. *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("*Weisberg II*"). Agency affidavits are typically accorded a presumption of good faith. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)). However, "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979).

Discovery is rare in FOIA litigation, *Pub. Citizen Health Research Group v. Food & Drug Admin.*, 997 F. Supp. 56, 72 (D.D.C. 1998), *rev'd in part on other grounds*, 185 F.3d 898 (D.C. Cir. 1999); however, "[t]he major exception . . . is when the plaintiff raises a sufficient question as to the agency's good faith in processing documents," *Landmark Legal Found. v. Envtl. Prot. Agency*, 959 F. Supp. 2d 175, 184 (D.D.C. 2013) (quoting U.S. Dep't of Justice, Guide to the Freedom of Information Act 812 (2009)). To rebut the presumption of good faith, a plaintiff's "allegations regarding the 'existence and discoverability of other documents' [must not be] 'purely speculative.'" *Id.* at 182 (citing *Negley v. Fed. Bureau of Investigation*, 169 F. Appx. 591, 594 (D.C. Cir. 2006)); *see also SafeCard Servs., Inc.*, 926 F.2d at 1200. A FOIA defendant that has failed to make accurate representations to the Court or otherwise acted in bad faith may not avoid discovery merely by making belated attempts at corrective action through additional searches and productions. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 185 F. Supp. 3d 26, 28–30 (D.D.C. 2016) (ordering discovery in a FOIA case even after

supplemental searches and productions by defendant agency due to unreliability of agency's representations to the Court); *Landmark Legal Found.*, 959 F. Supp. 2d at 179–80, 184 (ordering discovery in a FOIA case even after additional searches and productions by defendant due to facts and circumstances that undermined the Court's confidence in the truthfulness of the agency's representations).

When discovery is granted, it is often in circumstances where the adequacy of the agency's search has been called into question. U.S. Dep't of Justice, Guide to the Freedom of Information Act, "Litigation Considerations" at 113 & n.319 (Nov. 26, 2013), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/litigation-considerations.pdf; *see also Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) ("*Weisberg I*"); *Pub. Citizen*, 997 F. Supp. at 72; *Pulliam v. Envtl. Prot. Agency*, 292 F. Supp. 3d 255, 260–61 (D.D.C. 2018). Discovery is also merited "in an even rarer subset of these cases [when] the government's response to a FOIA request smacks of outrageous conduct." *Judicial Watch, Inc. v. U.S. Dep't of State*, 344 F. Supp. 3d 77, 80 (D.D.C. 2018) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 41 (D.D.C. 1998); *DiBacco v. U.S. Army*, 795 F.3d 178, 192–93 (D.C. Cir. 2015); *Flowers v. Internal Revenue Serv.*, 307 F. Supp. 2d 60, 71 (D.D.C. 2004)).

Rule 56(d) of the Federal Rules of Civil Procedure, formerly Rule 56(f), permits the court to "allow time to obtain affidavits or declarations or to take discovery" when a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(2). The declaration must: (1) "outline the particular facts he intends to discover and describe why those facts are necessary to the litigation"; (2) "explain 'why [he] could not produce [the facts] in opposition to the motion

[for summary judgment]'"; and (3) "show the information is in fact discoverable." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (internal citations omitted); *see also Banks v. Veneman*, 402 F. Supp. 2d 43, 47 (D.D.C. 2005) (The party seeking discovery "bears the burden of identifying the facts to be discovered that would create a triable issue and why the party cannot produce those facts in opposition to the motion.").

## II.   Summary Judgment Is Premature in This Case.

Summary judgment is inappropriate in FOIA litigation when the sufficiency of the agency's search is genuinely at issue. *Founding Church of Scientology*, 610 F.2d at 836. In support of its motion for summary judgment, the Department provided a statement of material facts as to which, it stated, there was no genuine dispute. *See* Def. Dep't of Justice's Statement of Material Facts as to Which There Is No Genuine Dispute, Nov. 16, 2018, ECF No. 16-2. That statement included assertions that "no written guidance or directives were issued to Mr. Huber in connection with this directive, either by the Attorney General, or by other senior leadership office staff" and that that conclusion was "confirmed over the course of several conversations between OIP and OAG." *Id.* ¶¶ 13–14 (citations omitted). However, hours before its reply and response to Plaintiff's cross-motion for summary judgment was due, the Department informed American Oversight that, in fact, there was a responsive record—with the eventual production over a week later revealing that Attorney General Sessions wrote a letter to Mr. Huber directing him to initiate an evaluation and that the Attorney General's Chief of Staff personally emailed the letter to Mr. Huber. Cafasso Decl., Ex. G. Critically, the document in question was in the possession of two individuals upon whose personal knowledge the DOJ's inaccurate declaration was based: Matthew Whitaker and John Huber.

Having called into question the veracity of material facts mere hours before the agency was prepared to continue defending its search, the Department's limited supplemental search does not restore the presumption of regularity to the Department's representations to American Oversight and to the Court. *See Competitive Enter. Inst.*, 185 F. Supp. 3d at 28; *Landmark Legal Found.*, 959 F. Supp. 2d at 179–80, 184. The incongruity between the representations made by the Declarant—that no records had been created and that all guidance and direction had been provided orally—and the discovery of responsive records undermines the credibility of all of the agency's untested and unsubstantiated assertions in this case, leaving Plaintiff to struggle in the dark with two fundamental questions: (1) what records were actually created reflecting the guidance and direction provided to Mr. Huber; and (2) where do those records exist? Consequently, discovery is necessary for American Oversight to evaluate whether the Department has conducted "a search reasonably calculated to uncover all relevant documents." *Weisberg II*, 705 F.2d at 1351.

The supplemental search conducted by the Department does not resolve the material facts in dispute. First, even if Plaintiff were to accept Defendant's representations regarding the scope and conduct of the supplemental search, it fails to address the questions of material fact introduced by the false representations that shaped the initial search in this case. Defendant submitted a declaration wherein it stated, based on representations made by Mr. Whitaker and Mr. Huber, among others, that there were absolutely no responsive records to the Guidance FOIA, and it affirmatively claimed that all guidance and direction provided to Mr. Huber was communicated orally. Brinkmann Decl. ¶¶ 14–16. Defendant subsequently identified a responsive record that was emailed from Mr. Whitaker to Mr. Huber. Cafasso Decl. ¶¶ 24–27; Cafasso Decl., Ex. G. Even in conducting its supplemental search, Defendant ignored the

fundamental flaw it was attempting to cure: if Mr. Whitaker and Mr. Huber had forgotten about (or deliberately overlooked) an email containing a formal directive from the attorney general, is it not possible that they forgot other categories of responsive records as well? In any event, having already made material misrepresentations to the Court, the fact that Defendant may, in the future, file additional declarations in this matter will not resolve these questions because Defendant's own conduct in this case establishes that limited discovery is necessary to test the reliability of Defendant's representations. *See Competitive Enter. Inst.*, 185 F. Supp. 3d at 28; *Landmark Legal Found.*, 959 F. Supp. 2d at 179–80, 184.

The scope of the investigation delegated to Mr. Huber is a matter of considerable public interest. The belatedly produced Attorney General Directive makes clear that, with limited if any predicate, the Attorney General directed Mr. Huber to undertake a broad, sweeping, and vaguely defined review of allegations regarding the political opponents of the president based on a demand by the president's political allies in Congress. These are troubling facts, and the public is entitled to know the full scope of Mr. Huber's assignment. But accountability for this troubling delegation depends upon a full disclosure of records reflecting the nature of all guidance and direction Mr. Huber received, which in turn depends upon the Department conducting a thorough search reasonably calculated to identify *all* responsive records. The sufficiency of that search for records responsive to the Guidance FOIA is the central question that remains in this matter. The parties have a genuine dispute regarding material facts related to the adequacy of the search that are necessary for summary judgment. Defendant is uniquely in possession of evidence relating to those facts, and Plaintiff cannot obtain that evidence without limited discovery. Therefore, briefing should be suspended so that American Oversight can conduct limited discovery to

establish admissible evidence relevant to the appropriateness of summary judgment in this matter for either party.

## III.    Limited Discovery Is Necessary and Appropriate.

The reliance on government declarations rather than discovery in the typical FOIA case rests on the presumption of regularity—that is, the assumption that government officials are acting in good faith and properly discharging their official duties. *See Weisberg II*, 705 F.2d at 1351; *see also Chem. Found.*, 272 U.S. at 14–15. Discovery is appropriate here because the plain facts revealed by the government's belated disclosure fully rebut that presumption, as those facts directly contradict the representations made by the Office of the Attorney General and the Office of the Deputy Attorney General, as reported in the sworn declaration filed in support of Defendant's motion for summary judgment, and raise grave concerns regarding whether the Department's initial search was grossly negligent or was not conducted in good faith.

### A.    The Department defended its initial determination that there were no responsive records with a declaration that relied on representations of senior DOJ officials.

American Oversight has concrete, non-speculative reasons for doubting the reliability of the Department's representations in this action and the Department's good faith. *See Landmark Legal Found.*, 959 F. Supp. 2d at 182; *SafeCard Servs.*, 926 F.2d at 1200. This is not a case where Plaintiff seeks discovery based on the "bare hope of falling upon something that might impugn the affidavits" submitted by the government. *See Founding Church of Scientology*, 610 F.2d at 836–37 n.101 (citing *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 355 (D.C. Cir. 1978). The reliability of the Department's declaration is already called into question by a simple comparison between the Declarant's description of the alleged search performed by OAG resulting in a determination that there were no responsive records to the Guidance FOIA and the

facts revealed by the responsive record—including a formal directive—that the Department finally produced.[3]

The declaration averred that OAG, after conversations with knowledgeable Department officials, including both then-OAG Chief of Staff Matthew Whitaker and U.S. Attorney John Huber, advised OIP that there was no written guidance or direction provided to Mr. Huber and further represented affirmatively that all guidance or direction provided to Mr. Huber on these issues was provided orally. Brinkmann Decl. ¶¶ 14–16. According to the declaration, at some point between when the Guidance FOIA was filed on November 22, 2017, and when OIP provided a final response on July 16, 2018, OIP contacted "the Counselor in the Attorney General's Office . . . responsible for assisting OIP with FOIA requests for OAG documents to ascertain . . . what guidance or directives, if any, were issued." *Id.* ¶ 14. The declaration went on to state that "[t]he Counselor to the Attorney General then conferred with other Department officials with direct knowledge of the subject matter, including the then-OAG Chief of Staff [Whitaker] and U.S. Attorney Huber." *Id.*

To conclude that there were no responsive records, the Declarant relied on OAG having "advised that, when the Attorney General directed Mr. Huber to evaluate these matters, no written guidance or directives were issued to Mr. Huber in connection with this directive, either by the Attorney General, or by other senior leadership office staff." *Id.* ¶ 15. According to the Declarant, OAG further informed her "that the details of Mr. Huber's direction were addressed

---

[3] American Oversight has no reason to believe that Declarant, a career attorney in OIP, inaccurately reported the information provided to her by officials in OAG and ODAG. However, in light of the facts revealed by the belatedly produced record, it is now clear that as a result of this reliance on the representations of others, the declaration relayed misrepresentations by officials in OAG (and possibly ODAG) that were at best the result of gross negligence and at worst a manifestation of a deliberate effort to conceal information and frustrate FOIA.

orally, in meetings or discussions among a small group of Department officials, including [then-Attorney General Jeff Sessions, Deputy Attorney General Rod Rosenstein, then-OAG Chief of Staff Matthew Whitaker, then-Principal Associate Deputy Attorney General Robert Hur], and U.S. Attorney Huber." *Id.*; Cafasso Decl. ¶ 22. Finally, the declaration states that "the lack of written guidance or directives was confirmed by OAG, pursuant to internal OAG discussions as well as discussions with Mr. Huber himself." Brinkmann Decl. ¶ 15. OIP concluded that no additional searching was necessary for written guidance or directives "[i]n light of the clear, comprehensive, and conclusive information [it] received directly from OAG." *Id.* ¶ 16.

The Department's March 8, 2019 production directly undermines the credibility of the Department's representations in the declaration and the OAG's representations to the Declarant: the belatedly discovered record is itself an email from Mr. Whitaker to Mr. Huber—the two individuals who, according to the declaration, were consulted regarding the records requested—relaying a formal letter from Attorney General Sessions charging Mr. Huber with undertaking a wide-ranging review of more than fifteen issues proposed for criminal investigation by Republican members of Congress, including the then-chairman of the U.S. House Committee on the Judiciary, involving the conduct of the former Democratic nominee for president, Hillary Clinton, as well as the conduct of the investigation into Russian interference in the 2016 election by DOJ and the FBI. Cafasso Decl. ¶¶ 24–27; Cafasso Decl., Ex. G. The stark contrast between the representations made by OAG reflected in the declaration and the facts revealed by the disclosed record raise serious questions regarding whether OAG participated in this search properly and in good faith.

**B.** **The discovery of a responsive email that directly contradicts representations made by senior DOJ officials gives rise to non-speculative reason to doubt the good-faith presumption typically afforded an agency declaration.**

It is difficult to believe that the failure to disclose the existence of the Whitaker Email and the Attorney General Directive to OIP was merely a failure of recollection or an inadvertent omission. A formal delegation of an investigative charge by the attorney general is a rare occurrence—Plaintiff is unaware that DOJ appointed any other special prosecutors during Mr. Sessions's tenure as attorney general. Cafasso Decl. ¶ 12. And the charge contained in the Attorney General Directive—to review criminal investigations of the Clintons and the Clinton Foundation as well as disturbing allegations of abuse of power by the Department itself and the FBI, apparently in response to a request by political allies of the president in the House of Representatives—is high profile and highly controversial. Such a sensitive formal delegation of authority is nothing if not memorable.

Thus, it strains credulity that none of the knowledgeable Department officials consulted—including Mr. Whitaker and Mr. Huber, the sender and recipient of the email relaying the Attorney General Directive—recalled the existence of this letter when, only a few months after the letter was sent, they were directly questioned about the existence of written guidance or direction. It is likewise difficult to credit that all of those knowledgeable officials instead explicitly recalled that all direction was provided to Mr. Huber only orally in meetings and discussions. Nor is it credible that the misrepresentation resulted from confusion about whether this record was responsive to the request—a formal letter defining the scope of Mr. Huber's charge is at the very core of the sort of guidance and direction sought by the request. These facts plainly call the Department's representations in its declaration "into question," and raise questions "as to the agency's good faith" in a manner that courts have found warrants

discovery. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, No. 05-2078, 2006 WL 1518964, at *3 (D.D.C. June 1, 2006) [hereinafter *CREW v. DOJ*] (citing *Judicial Watch Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000); *Pub. Citizen*, 997 F. Supp. at 72–73)).

Additional facts surrounding the letter raise further questions about the reliability of Defendant's search. Indeed, given the nature of Mr. Huber's extraordinary assignment outside his ordinary jurisdiction as U.S. Attorney for the District of Utah, the absence of any responsive records alone should have struck "Department officials with direct knowledge about the subject matter," Brinkmann Decl. ¶ 14, as odd and unlikely.[4] In addition, despite the fact that the Attorney General Directive expressly indicated that the delegation of authority to Mr. Huber was undertaken "[i]n consultation with the Deputy Attorney General," the Declarant indicated that she consulted with an unnamed official in ODAG regarding OAG's representation that Mr. Huber received no written guidance or directives, and ODAG presumably confirmed this (now clearly erroneous) claim. Brinkmann Decl. ¶ 15. Moreover, it is unclear that OAG took its FOIA search obligations seriously at all, given that a simple review of the Attorney General's correspondence file for the relevant time period for any correspondence with Mr. Huber should have uncovered a formal letter like the belatedly discovered document.[5]

---

[4] Sections III.A, III.B, and III.C of Plaintiff's memorandum in support of its cross-motion for summary judgment and opposition to Defendant's motion discussed a number of categories of documents that one would expect to exist in the instance of such an extraordinary delegation of authority, including one such as the Attorney General Directive. Mem. of Points & Authorities Supp. of P.'s Cross-Mot. for Summ. J & Opp. to Def.'s Mot. for Summ. J. at 14–23, ECF 18-1.

[5] Nor is it credible that the passage of time somehow obscured officials' recollection of this memorable record. The belatedly disclosed record reveals that Mr. Whitaker emailed the Attorney General Directive to Mr. Huber a little after five o'clock on the evening of November 22, 2017, four hours after Plaintiff submitted the FOIA request seeking any guidance or directives provided to Mr. Huber, and the processing of the Guidance FOIA was completed only months later. *Compare* Cafasso Decl., Ex. G *with* Brinkmann Decl. ¶¶ 7, 14–15. Moreover,

**C.** **In light of the non-speculative reason to doubt the presumption of regularity, American Oversight is entitled to discovery.**

In these circumstances, Plaintiff is entitled to discovery to test whether the explanation for those evident and indisputable misrepresentations is deliberate concealment, gross negligence, or something in between. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Veterans Affairs*, 828 F. Supp. 2d 325, 334 (D.D.C. 2011) (hereinafter *CREW v. VA*) (approving deposition of two VA employees for the "purpose of determining whether the explanation for the [potential improper destruction of responsive records] is document destruction, incompetence, or something in between"). The facts here raise sufficient questions regarding the good faith of the search on the part of the Department to warrant limited discovery for the purpose of exploring the reasons and motivations behind the false representations regarding both the existence of responsive records and the course of dealing between OAG and Mr. Huber. *See CREW v. DOJ*, No. 05-2078, 2006 WL 1518964, at *3–6 (D.D.C. June 1, 2006) (granting plaintiff's motion for discovery in the form of time-limited depositions because plaintiff raised sufficient question of bad faith on the part of the government to "warrant limited discovery for the purpose of exploring the reasons behind the delays in processing [the plaintiff's] FOIA requests").

One of the primary reasons courts grant discovery in FOIA matters is to resolve material questions that have arisen regarding the adequacy of an agency's search. *See Landmark Legal Found.*, 959 F. Supp. 2d at 184; *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 127 F. Supp. 2d

---

throughout this timeframe, this extraordinary assignment of investigative authority to Mr. Huber was ongoing and remained of considerable interest on both sides of the aisle in Congress. *See* Laura Jarret, *Acting AG Whitaker Reveals Federal Prosecutor Still Investigating GOP Claims of FBI Misconduct*, CNN (Jan. 3, 2019, 11:58 a.m.), https://www.cnn.com/2019/01/03/politics/whitaker-prosecutor-fbi/index.html.

228, 230 (D.D.C. 2000); *Bangoura v. U.S. Dep't of the Army*, No. 05-0311, 2006 WL 3734164, at *6 (D.D.C. Dec. 8, 2006); *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205, 210 (N.D.N.Y. 1998). This is true particularly where, like here, Plaintiff can point to concrete facts that draw the reliability of the agency's declarations into question. *CREW v. VA*, 828 F. Supp. 2d at 334; *Landmark Legal Found.*, 959 F. Supp. 2d at 184; *Weisberg I*, 627 F.2d at 370–71; *Pulliam*, 292 F. Supp. 3d at 260-61.

As courts in this District have recognized, discovery may be granted in FOIA matters where plaintiff has made a sufficient showing that the agency may have acted in bad faith, "has raised a sufficient question as to the agency's good faith," or "when a factual dispute exists and the plaintiff has called the affidavits submitted by the government into question." *CREW v. DOJ*, No. 05-2078, 2006 WL 1518964, at *3 (D.D.C. June 1, 2006) (internal citations omitted).

Unlike a typical FOIA case where discovery is not necessary because the agency "has made a detailed declaration in good faith and there is no factual dispute remaining," *Bangoura*, 2006 WL 3734164, at * 2, here the belatedly produced record, on its face, raises material factual questions about the adequacy of the Department's search, as well as whether OAG participated in the initial search in good faith. The deficiencies in the Department's posture in this litigation are similar to those when the court granted discovery in *Bangoura*: there is no explanation for "why the search procedures were not adequate enough to find the [document] during the initial search," and DOJ has provided no "rationale for the delay in finding the requested [document]." *Id*. at *6. Ultimately, discovery is warranted here because "there are direct contradictions, questions of fact, and questions of good faith" that arise from reviewing and comparing the

belatedly discovered record and the false representations contained in the initial declaration. *See Long*, 10 F. Supp. 2d at 210.[6]

## IV.  Plaintiff's Proposed Discovery Is Necessary to Establish Material Facts Regarding the Adequacy of the Search

To illustrate why limited discovery is necessary here to establish facts material to the question before the Court, Plaintiff provides the following overview of the discovery it believes is necessary to adduce facts likely to create a genuine issue of material fact regarding the adequacy of the Department's search and any attempts to undermine FOIA.[7] If requested, Plaintiff will provide a detailed discovery plan within seven days of its motion being granted or as otherwise ordered by the Court. To establish the facts necessary to evaluate summary judgment, Plaintiff proposes to begin with a small number of interrogatories and time-limited

---

[6] The unexplained delay by DOJ in actually producing the responsive record once it was identified is also not encouraging. Defendant first informed Plaintiff that it had identified this record in the evening of Thursday, February 28, 2019, the day Defendant's reply-response was originally due to be filed. Cafasso Decl. ¶ 20. Yet despite Plaintiff's repeated requests that Defendant produce the record in advance of the joint status report scheduled by the Court for March 7, 2019, Defendant only produced the record after close of business on Friday, March 8, 2019. *Id.* ¶ 24. There is no legal basis under FOIA to delay the release of an identified record to a FOIA requester in order to serve the public relations interests of the agency—a requester is entitled to prompt access to responsive records by law. Yet Plaintiff is aware of no other explanation for the delay in production of the record, which OIP eventually produced in full, without any claim of exemption and with no indication that it was a discretionary release. Nor, once the record was identified, did Defendant indicate to Plaintiff at any time that it was evaluating whether the record was releasable; rather, as reflected in Defendant's request for an extension, Plaintiff understood that Defendant had already made a determination that the record was releasable. Def.'s Unopposed Mot. for Extension of Time ¶ 2, Feb. 28, 2019, ECF No. 22 (OIP "learned this evening of a record responsive to Plaintiff's 'Guidance FOIA' request that was not identified by OIP's initial search for records. In light of this discovery, DOJ requests a short extension of time to produce this record to Plaintiff . . . ."); *see also* Joint Status Report ¶ 1, Mar. 7, 2019, ECF No. 23 ("The Department will release the record it identified to Plaintiff this week."). Notably, this unexplained delay also meant that the record was not produced until after March 2, 2019, Mr. Whitaker's last day at the Department. *See* Cafasso Decl. ¶ 21.

[7] The overview provided here may not be exhaustive. Additional facts gathered during discovery may identify additional areas where it is necessary for Plaintiff to conduct further discovery.

depositions. This proposed discovery will seek to elicit the facts necessary to ascertain the adequacy of the Department's search and evaluate whether the failure of the initial search to identify the Whitaker Email resulted from negligence or a deliberate attempt to prevent compliance with FOIA. Plaintiff has, in the first instance, limited its request for depositions to those individuals most likely to possess concrete and first-hand information about the Department's search, the existence and location of responsive records, and any actions that may reflect on whether Department officials discharged their duties in connection with the initial search for records responsive to the Guidance FOIA properly and in good faith.

      **A.**    **There exist unknown facts necessary to resolve this litigation.**

A party seeking discovery must "outline the particular facts he intends to discover and describe why those facts are necessary to the litigation." *Convertino*, 684 F.3d at 99 (citing *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 248 (D.C. Cir 1999)). The central question that remains in this litigation is whether Defendant conducted a reasonable search calculated to uncover all responsive records. *See* Cafasso Decl. ¶ 35. To address that question in this litigation, Plaintiff needs, and seeks to discover, the following facts:

    a.  The number of meetings or conversations Mr. Huber had with the Office of the Attorney General and/or the Office of the Deputy Attorney General regarding the evaluation he was to undertake as described in Assistant Attorney General Boyd's letter;

    b.  For each of those meetings or conversations, how those meetings or conversations took place (e.g., by phone, by video conference, in person, etc.);

    c.  For each of those meetings or conversations, who was present during those meetings or conversations;

d.  For each of those meetings or conversations, what, if any, records were used, exchanged, made available, or created in connection with those meetings or conversations that reflect guidance or direction provided to Mr. Huber, such as background materials, talking points, memoranda to file, or handwritten notes;

e.  Who, if anyone apart from those present for those meetings or discussions, was involved in the drafting or review of the Attorney General Directive;

f.  Whether any paper or electronic materials were provided to Mr. Huber other than by electronic mail (e.g., whether he was handed paper materials or a flash drive with files on it);

g.  If any paper or electronic materials were provided to Mr. Huber other than by electronic mail, who provided them to him, and how;

h.  Whether any officials communicated directly or indirectly to Mr. Huber outside those meetings and discussions to provide any other guidance or direction, and if so, whether that guidance or direction is captured in any records, such as text messages, messages on an electronic messaging system (such as Lync or Slack), voicemails, handwritten notes, or other medium of communication;

i.  How the search for records was conducted and how any potentially responsive records were evaluated for responsiveness;

j.  How paper and electronic records of former Department employees are handled upon their departure;

k.  How paper and electronic records of Department employees who move to a different agency component are handled upon their transfer;

l. How and why it came to be that Defendant submitted a sworn declaration in support of its motion for summary judgment that contained material representations of statements made by "Department officials with direct knowledge of the subject matter," including the former Chief of Staff to the Attorney General and the U.S. Attorney for the District of Utah, that were untrue.

*See id.* ¶¶ 36–37.

Establishing these facts is necessary to the litigation, because these facts are material to the evaluation of the adequacy of the Department's search. *See id.* ¶¶ 38–39. These facts are necessary to determine what custodians, locations, and systems of records should have been searched to conduct a search reasonably calculated to identify all responsive records. *See id.* ¶ 38. These facts are also material to address the question of whether the misrepresentations contained in the initial declaration resulted from negligence or a lack of good faith in the discharge of the agency's responsibility to conduct a search for responsive records, and will indicate whether any additional discovery is necessary in this case. *See id.* ¶¶ 40–41. Thus these facts are material to American Oversight's and the Court's evaluation of whether the search conducted by the agency was adequate.

**B.      Defendant and former Department officials are in sole possession of the unknown facts necessary to resolve this litigation.**

A party seeking discovery must also explain why it cannot produce the facts sought and show that the information is discoverable. *Convertino*, 684 F.3d at 99–100 (citations omitted). The facts outlined above remain solely in the possession of the Department and former Department officials, and are material to the question of the adequacy of the search currently pending before the Court on summary judgment. *See* Cafasso Decl. ¶¶ 39, 41, 43, 45. Likewise, the facts outlined above can be ascertained through discovery. *See id.* ¶ 44. Plaintiff's proposed

24

plan for limited discovery is designed to obtain admissible and material evidence necessary for Plaintiff to seek summary judgment and to oppose Defendant's motion for summary judgment in the most efficient manner consistent with obtaining reliable evidence regarding material facts in dispute. The limited interrogatories and depositions proposed by Plaintiff are intended to elicit evidence central to the question of the adequacy of Defendant's search, the primary remaining issue in this case. *See id.* ¶¶ 45–47.

The facts that Plaintiff seeks are outside of its possession and can be produced exclusively by Defendant or by former Department officials. *See id.* ¶ 43. To obtain admissible evidence as to the above-referenced facts as efficiently as possible, Plaintiff intends to use a limited number of interrogatories to identify information like the identities of participants in relevant activities at the Department, such as the participants in meetings and discussions where guidance or direction was provided to Mr. Huber; the participants in the drafting of the Attorney General Directive; and the participants in the initial search for responsive records who communicated with OIP or with officials in OAG or ODAG gathering information to relay to OIP. *See id.* ¶ 46.

In addition, Plaintiff proposes to conduct a small number of time-limited depositions, starting with the witnesses most likely to be able to provide relevant evidence regarding how the search was conducted; possible locations, custodians, or systems of records where responsive records might be located; how the initial search was conducted; how the request was construed by the Department; and how inaccurate representations came to be included in the Department's sworn declaration:

  i. Vanessa Brinkmann, Office of Information Policy (the Declarant);

ii.  The Counselor to the Attorney General who undertook the search of OAG for responsive records and communicated to OIP regarding the results of that search;

iii.  Then-Chief of Staff to the Attorney General Matthew Whitaker; and

iv.  U.S. Attorney for the District of Utah Huber. [8]

*See id.* ¶ 47. Depending on the information obtained from this discovery, it might also be necessary to depose the official (or officials) in ODAG with whom OIP consulted to confirm the (erroneous) results of the OAG search. *See id.* ¶ 41. Any discovery by Plaintiff can be appropriately limited to focus on that which is admissible, such as the process by which any guidance or direction was conveyed and recorded so as to facilitate the identification of potential locations of responsive records, and towards how the search was conducted, in order to evaluate the adequacy of the search, including whether it was reasonably calculated to identify all potentially responsive records.

Plaintiff is hopeful that this limited discovery will be sufficient to identify the evidence necessary to proceed to summary judgment. However, it is possible that during the course of conducting this discovery, Plaintiff may learn additional facts that identify additional areas where it is necessary for Plaintiff to conduct further discovery. Plaintiff would notify the Court before pursuing discovery apart from the proposed discovery outlined above.

---

[8] To the extent that relevant personnel or officials have left the Department, Plaintiff may have to serve third-party discovery requests on such persons. Indeed, because multiple key witnesses to the relevant events are now former officials, DOJ lacks the authority to compel their cooperation or participation in this matter. Having waited until key witnesses left government service before taking steps to correct the record, DOJ effectively lacks the ability to identify material information to evaluate the adequacy of the search absent discovery through court-backed subpoenas.

**V.**    **Plaintiff's Proposed Discovery Plan Is Reasonable and Proportionate to the Needs of This Case.**

Plaintiff is not unaware of the gravity of its request to depose the person who served as both chief of staff to the attorney general and later as acting attorney general. Plaintiff is not seeking "to probe the mental processes" of any DOJ officials, *see United States v. Morgan*, 313 U.S. 409, 422 (1941), but rather is seeking a limited amount of time to inquire with the individuals who have first-hand knowledge of relevant facts regarding the records in question, including the locations, custodians, or systems of records where potentially responsive records might be located, and thus are in the best position to answer questions regarding the facts outlined above, so as to ensure that the Department conducts a search reasonably calculated to uncover *all* relevant records, *see Weisberg I*, 627 F.2d at 370–71.

The Guidance FOIA seeks directives and guidance given to a United States Attorney for an investigation that potentially centers on a former political adversary of the president. The Department's initial declaration stated that no such records exist because all such direction and guidance was exclusively provided to U.S. Attorney Huber orally by a small group of the most senior DOJ officials, including the attorney general's chief of staff. The belatedly produced email from Mr. Whitaker to Mr. Huber directly refutes the representations made by OAG officials, reportedly based on consultations directly with both Mr. Whitaker and Mr. Huber, contained in DOJ's declaration. The supplemental search yielded no additional responsive records and did not assuage Plaintiff's concerns regarding the adequacy of DOJ's search.

The agency is no longer entitled to a presumption of regularity in this case, and it is necessary for American Oversight to conduct discovery that will test the facts relating to the issue before the Court—whether there has been an adequate search for records responsive to Plaintiff's FOIA request—and reveal all potential locations where responsive records might be

located. The identified DOJ officials above are proposed as deponents because they have direct knowledge regarding the occasions and mechanisms through which information was relayed to Mr. Huber and consequently regarding where records reflecting any such guidance and direction may exist. *See Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 15-mc-752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)) (party seeking to depose high-ranking official must demonstrate, "for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means"); *see also Payne v. District of Columbia*, 859 F. Supp. 2d 125, 136 (D.D.C. 2012). The proposed deponents are in the best position to provide admissible evidence regarding the questions of material fact relevant to resolution of this case, particularly where the evidence submitted by the Department to date raises significant questions that can be answered only by those with first-hand knowledge of the facts at issue.

## VI.     Conclusion

For the foregoing reasons, Plaintiff American Oversight respectfully requests that this Court stay summary judgment briefing and grant American Oversight leave to conduct discovery pursuant Federal Rule of Civil Procedure 56(d) to obtain admissible evidence about what records responsive to the Guidance FOIA were created, where those records may be located, and whether the Department's submission of false statements to the Court in a sworn declaration submitted in support of its motion for summary judgment was the result of gross negligence or a deliberate attempt to frustrate FOIA.

Dated: April 15, 2019

Respectfully submitted,

*/s/ Cerissa Cafasso*
Cerissa Cafasso
D.C. Bar No. 1011003
Daniel A. McGrath
D.C. Bar No. 1531723
Austin R. Evers
D.C. Bar No. 1006999

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5244
cerissa.cafasso@americanoversight.org
daniel.mcgrath@americanoversight.org
austin.evers@americanoversight.org

*Counsel for Plaintiff*